■ Rosa M. Manas y Pineiro, Respondent, v Chase Manhattan Bank, N. A., Appellant.—Order, Supreme Court, New York County, entered August 1, 1975, affirmed. Respondent shall recover of appellant $60 costs and disbursements of this appeal. In 1958, plaintiff-respondent, a Cuban national resident there, paid nearly a quarter million dollars to a branch maintained by defendant-appellant bank in Cuba, in exchange for certificates of deposit, refundable to the depositor only upon "submission of this document" a year later. Though the currency deposited was referred to as "national currency" nothing was said about what kind of currency was to be refunded, pesos or other, nor was any place specified for redemption. Plaintiff departed Cuba with the certificates ahead of the coming to power of the Castro government, which thereafter expropriated the accounts of the local branch of defendant bank and also forbade export of Cuban currency. Years after issuance of the certificates, plaintiff presented them here to defendant bank and requested payment. It was refused, defendant claiming that acts of State by Cuba in confiscating the accounts of a Cuban citizen and in forbidding the export of Cuban currency had the effect of extinguishing the debt and that, in any event, the Cuban branch being completely independent of defendant bank, presentment here did not involve refusal by the Cuban branch to pay. A proceeding based upon instruments for the payment of money only, brought on by motion for summary judgment, resulted in denial of the motion, as well as of the cross motion to dismiss. As observed at Special Term, there are issues of fact raised not alone by the omissions in the documents as to

place of payment and the nature thereof but also as to plaintiff's status vis-à-vis the Cuban government when it committed the dictatorial acts, said to be in accordance with its laws, of claimed expropriation of the debt owed to plaintiff, as well as of the currency with which it might have been paid. The question of plaintiff's status alone is sufficient at this juncture to preclude decision as to whether the claimed seizures were permissible acts of a sovereign State upon which defendant appears to rely in rejection of plaintiff's claim. (Cf. *French v Banco Nacional de Cuba,* 23 NY2d 46.) These issues alone are sufficient to defeat defendant's cross motion for summary judgment. Concur—Stevens, P. J., Markewich and Kupferman, JJ.; Birns and Capozzoli, JJ., dissent in the following memorandum by Capozzoli, J.: Capozzoli, J. (dissenting). Even if we assume that the contention of the plaintiff is correct, viz: that she had entered into an understanding with the Cuban branch of defendant bank that the certificates of deposit could be repaid in the United States, it would not authorize our court to invalidate the subsequent seizure of the proceeds in the Cuban branch, by the Cuban government. If, as plaintiff argues, the certificates could be repaid in the United States, surely they could also be repaid at the Cuban branch of defendant's bank. As much as we dislike the act of confiscation, the fact is that it was done by a foreign government, within its own jurisdiction, pursuant to its own laws, and directed against one of its citizens. In *Underhill v Hernandez* (168 US 250, 252) our Supreme Court said: "the courts of one country will not sit in judgment on the acts of the government of another done within its own territory." In *Banco Nacional de Cuba v Sabbatino* (376 US 398, 428), the Court said: "the Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government". Hence, when the proceeds of the certificate were confiscated by the Cuban government, at the Cuban branch of defendant bank, the obligation owed to plaintiff by defendant was extinguished. In section 1-105 of the Uniform Commercial Code, we find the following: "(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." An examination of the *Banking Law* discloses that *section 138* deals with foreign branches of banks or trust companies which, in accordance with the Banking Law, have opened and occupied branch offices in foreign countries and subdivision one thereof reads as follows: "1. Notwithstanding section 1-105 of the uniform commercial code, any bank or trust company which in accordance with the provisions of this chapter shall have opened and occupied a branch office or branch offices in any foreign country shall be liable for contracts to be performed at such branch office or offices and for deposits to be repaid at such branch office or offices to no greater extent than a bank, banking corporation or other organization or association for banking purposes organized and existing under the laws of such foreign country would be liable under its laws. The laws of such foreign country for the purpose of this section shall be deemed to include all acts, decrees, regulations and orders promulgated or enforced by a dominant authority asserting governmental, military or police power of any kind at the place where any such branch office is located, whether or not such dominant authority be recognized as a de facto or de jure government." Under this section it is obvious that the Cuban branch of the defendant bank would be entitled to the same defense against an attempt of the plaintiff to enforce payment of the certificates that a Cuban bank, organized under the Cuban laws, could plead. Surely, a

Cuban bank's defense would be conclusive as against any attempt to recover from it under these circumstances. Therefore, I conclude that the motion to dismiss the complaint should be granted.