*661 OPINION OF THE COURT
Leonard N. Cohen, J.
This case is an illustrative caveat to foreign nationals purchasing promissory money instruments from American branch banks abroad wherein subsequent to purchase a foreign governmental change results in the confiscation of the national’s funds. Unless the instrument clearly expresses intentions of payment of such a debt in United States dollars in the United States only the national’s expectation of ultimate payment here may prove illusory.
Plaintiff is a Cuban citizen, currently residing in the United States in exile. Plaintiff’s husband was the Minister of Communications in the former Batista government’s cabinet. Plaintiff’s husband is now also in the United States, in exile, having taken asylum in the Colombian Embassy in Cuba when Castro assumed control of the Cuban government on January 1, 1959 and in March, 1959, leaving his homeland without ever returning.
On various dates between May and December, 1958, plaintiff purchased five nonnegotiable certificates of deposit (hereinafter referred to as CD’s) from the defendant, Chase Manhattan Bank, N. A. _ (hereinafter referred to as Chase) with varying maturity dates of one year or less totaling “$227,336.47” in “Moneda Nacional” at an annual interest rate of 3% at Chase’s Marianao, Cuban branch. On their face, the CD’s were ambiguous as to both the currency in which they were payable and the place of presentment, neither having been specifically or unambiguously provided.
In January, 1974, the CD’s were presented for payment by the plaintiff at Chase’s principal place of business in New York City. On February 14, 1974, Chase refused to honor the drafts. On July 24,1974, the plaintiff commenced an action to recover the principal amount of the five CD’s in United States dollars by motion for summary judgment in lieu of complaint, with defendant Chase cross-moving for summary judgment. Both motions were denied at Special Term of this court by Justice Hilda Schwartz, who stated in an order dated August 1, 1975, that: “There are questions of fact to be resolved including, — but not limited *662 to, whether the deposits were made in U.S. currency, whether they were payable in U.S. currency, whether representations were made to the plaintiff, as she claims, that her certificates would be payable in the U.S., in view of the lack of any restriction as to the place of payment on the face of the certificates, whether the bank, under the circumstances extant in Cuba at the time of the deposit, was chargeable with knowledge of the purpose of the deposits, or whether asssets of the bank were transmitted out of Cuba between the time of the deposit and the Cuban government’s actions to cover this liability.”
On appeal by Chase, the Appellate Division in a three to two decision in May, 1976, affirmed this holding (Pineiro v Chase Manhattan Bank, 52 AD2d 794-795), stating that: “As observed by Special Term, there are issues of fact raised not alone by the omissions in the documents as to place of payment and the nature thereof but also as to plaintiff’s status vis-a-vis the Cuban government when it committed the dictatorial acts, said to be in accordance with its laws, of claimed appropriation of the debt owed to plaintiff, as well as of the currency with which it might have been paid. The question of plaintiff’s status álone is sufficient at this juncture to preclude decision as to whether the claimed seizures were permissible acts of a sovereign State upon which defendant appears to rely in rejection of plaintiff’s claim”.
In accordance with the Appellate Division majority decision, this case was set down for a jury trial of these factual issues raised by the ambiguities on the face of the CD’s and by defendant Chase’s defenses.
The plaintiff’s theory of recovery was based simply on the proper presentment of an instrument for the payment of money only. Plaintiff asserts her right to demand payment upon presentation of the CD’s in dollars at any Chase branch in the world. Defendant Chase claimed the CD’s were payable only in pesos and only at its Marianao, Cuba branch. Further, Chase asserts several statutory and common-law defenses stemming from the events which took place in Cuba following Castro’s assumption of power.
*663 After trial, questions of fact were submitted to the jury for a special verdict to resolve the apparent ambiguities and determine the intention of the parties at the time of the transaction as to (1) whether the place of presentment of the CD’s was in New York only, Marianao, Cuba only, or a Chase branch anywhere in the world, including New York and Marianao, Cuba; (2) whether the currency in which repayment was to be made was United States dollars only, or Cuban pesos only; and (3) whether plaintiff’s funds on deposit in defendant Chase’s Cuban branch had been confiscated by the Cuban government.
In its special verdict, the jury found that the CD’s were repayable in United States dollars at a Chase branch anywhere in the world, including New York and Marianao, Cuba, and further that plaintiff’s funds on deposit with the Chase branch in Marianao, Cuba, had been in fact confiscated by the Castro government.
After the rendition of the special verdict and upon the jury’s findings, both plaintiff and defendant moved for judgment as a matter of law. Plaintiff asserted her right to present the CD’s anywhere in the world and collect United States dollars as consistent with the jury’s verdict.
The defendant raised the following defenses as a matter of law. First, defendant urges that as a matter of common law, defendant is relieved of liability because the act of State doctrine prohibits this court from inquiring into the validity of the confiscation of plaintiff’s funds or the nationalization of defendant’s assets by the duly constituted Castro government. Secondly, with respect to the obligation of the main branch of Chase in New York, defendant argues that as a New York State chartered bank, subdivision 1 of section 138 of the Banking Law applies and extinguishes any obligation on the part of the parent bank for the obligations of its branches in a foreign country where local foreign branches under the same circumstances would no longer be liable. Thirdly, Chase asserts that the jury finding that the CD’s were payable only in United States dollars was against the weight of the evidence.
As to the third defense, this court finds the verdict not *664 to be against the weight of the credible evidence and therefore this defense is dismissed as without merit.
Turning to the first defense, Chase urges that under common law, the Cuban acts of confiscation of plaintiff’s deposited funds in defendant’s Cuban branch and the nationalization of Chase’s Cuban branch assets and liabilities extinguished its liability to repay these CD’s. This argument is based on the theory that such seizures or takings were the acts of a foreign government which under the act of State doctrine may not be scrutinized by the courts of the United States.
There is no dispute that all the Chase Cuban branches were nationalized in September, 1960, and that the Castro government expropriated the Chase assets and liabilities. More significantly, the jury found that plaintiff’s funds represented by the CD’s and on deposit with Chase were confiscated in September, 1959, pursuant to the laws promulgated by the Cuban Ministry of Misappropriated Funds. This confiscation was a valid, legally binding act of the Cuban government, even assuming a lack of publication in the Official Gazette as asserted by plaintiff as being required by Cuban law. (French v Banco Nacional de Cuba, 23 NY2d 46; Banco de Espana v Federal Reserve Bank of N. Y., 114 F2d 438.)
The question for resolution by this court is the applicability of the act of State doctrine to this confiscation and if such doctrine is applicable, its legal consequences for these parties.
The classic statement of the act of State doctrine is found in Underhill v Hernandez (168 US 250, 252) and it requires that every sovereign State is bound “to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory”. (See, also, Banco Nacional de Cuba v Sabbatino, 376 US 398; French v Banco Nacional de Cuba, supra,; Pons v Republic of Cuba, 294 F2d 925, cert den 368 US 960; Restatement, 2d, Foreign Relations Law of the United States, § 41.) Our courts will not examine the validity of the taking of property by a foreign government *665 within its own territory, even if it is asserted that the taking was in violation of international law. (Banco Nacional de Cuba v Sabbatino, supra.) As stated in Tabacalera Severiano Jorge, S. A. v Standard Cigar Co. (392 F2d 706, 715, cert den 393 US 924): “It is * * * when a foreign government performs an act of state which is an accomplished fact, that is when it has the parties and the res before it and acts in such a manner as to change the relationship between the parties touching the res, it would be an affront to such foreign government for courts of the United States to hold that such act was a nullity.” To determine whether the act herein was an accomplished fact, the court must determine the situs of the debt evidenced by the plaintiff’s CD’s for only if that debt had its situs in Cuba could the Cuban government act in a way to extinguish plaintiff’s right to repayment.
The resolution of the situs of the CD’s is a difficult question. The situs of intangible property is as intangible a concept as is known to law. It has been noted that the situs of intangible property may vary according to the purpose for which the question is posed. (Tabacalera Severiano Jorge, S.A. v Standard Cigar Co., supra.) However, it would appear that it is now accepted for the purpose of the act of State doctrine that a debt is located within a foreign State if that State has the power to enforce or collect it. (Menendez v Saks & Co., 485 F2d 1355, revd on other grounds sub nom. Alfred Dunhill of London v Cuba, 425 US 682). Such a view is consistent with the act of State doctrine in that having the power to collect or enforce the debt, the foreign State would also have the concomitant power to “take it”. A finding that the Cuban government had the power to collect or enforce this debt rests ultimately upon a determination that the parties or their agents were present in Cuba and subject to the jurisdiction of the Cuban courts at the time of the confiscation. To make this initial determination, we must turn to the facts adduced at trial.
There is no doubt that Chase was subject to the jurisdiction of the Cuban courts at the time of the confiscation. The Chase branches in September, 1959, were open and operating subject to the laws and jurisdiction of the Cuban government. Plaintiff also was subject to the laws of Cuba *666 at the time of the taking. She was a Cuban citizen, either actually in Cuba on the day of confiscation, or temporarily outside the country. In any event, it is clear that if she was outside Cuba, it was only a temporary visit to Colombia. She returned to Cuba shortly thereafter and had not established residency anywhere else. In this sense, her status, as raised by the Appellate Division, was of a Cuban citizen, subject to Cuban law at the time of the confiscation.
These circumstances were unlike the situation in Republic of Iraq v First Nat. City Bank (241 F Supp 567, affd 353 F2d 47, cert den 382 US 1027), where the court held that plaintiff could not recover the allegedly confiscated funds of the former King Faisal which were on deposit in defendant’s New York bank. The court therein specifically noted that the defendant had no branch offices in Iraq and therefore the debtor was not subject to the jurisdiction of the Iraqi courts. Consequently, Iraq had no power to compel payment or collection, the subject matter of the taking being outside the jurisdiction at the time of the taking. In Trujillo-M v Bank of Nova Scotia (51 Misc 2d 689, affd 29 AD2d 847, cert den 393 US 982), the court acknowledged the taking as an accomplished act of a foreign government, having found that the branch bank was located in the jurisdiction and therefore both the debtor and creditor were subject to the jurisdiction of the foreign government.
In the case at bar, both the persons and the res were within the territorial dominion of the acting State at the time of the confiscatory taking. In this court’s opinion, under the facts as established at trial, the situs of the debt herein was Cuba. In order for this debt to be beyond Cuban jurisdiction in this case, it would have been necessary for the jury to have found that the place of presentment was only outside of Cuba. The jury finding that payment could be anywhere did not change the situs of this debt from Chase in Cuba while it functioned there. It only created an option for plaintiff to collect the debt elsewhere prior to the confiscation. Although it is true, as asserted by plaintiff, that the parent bank is ultimately liable for the obligations of the branch (Sokoloff v National City Bank of N. Y., 130 Misc 66, affd 223 App Div 754, affd 250 NY 69), such a *667 liability does not alter the situs of the debt. When the branch’s liability is extinguished, as under the facts herein, the parent is relieved as well.
Accordingly, this court holds that the judicial self-limiting act of State doctrine applies herein as the confiscation of plaintiff’s funds was an official act of a sovereign government fully executed within its own jurisdiction and whose validity this court must refuse to inquire into, thereby implicitly giving the act extraterritorial effect. A confiscatory decree, the very archetype of an act of State, (Republic of Iraq v First Nat. City Bank, 241 F Supp 567, affd 353 F2d 47, cert den 382 US 1027, supra), may not be reviewed, if fully executed, even if the property later comes into the jurisdiction of the forum and will necessarily be given effect regardless of how repugnant the result may be to the public policy of the forum. (Banco Nacional de Cuba v Sabbatino, 376 US 398, supra.)
In view of the above, it is unnecessary for the court to consider the effect of the subsequent nationalization of the Chase branches, or the possible applicability of subdivision 1 of section 138 of the Banking Law. The court notes in passing the assertion by plaintiff that the holding in Banco Nacional de Cuba v Chase Manhattan Bank, N.A. (61 Civ 4663, 1980) is res judicata is without merit. The acquisition of a “Bernstein” letter by the defendants in that case applies only to the holding therein.
Judgment is for the defendant as a matter of law and based upon the jury findings.