Irving H. Saypol, J.
Defendant the Bank of Nova Scotia moves for an order dismissing the complaint for failure to state a cause of action (CPLR 3211, subd. [a], par. 7), or, alternatively, forum non conveniens. Plaintiff Romeo Trujillo-M cross-moves for an order granting summary judgment in his favor (CPLR 3212).
The parties thus are in accord on the following material facts. Defendant is a Canadian banking corporation authorized to do business in New York. It maintains a branch office in Santo *690 Domingo. Plaintiff is now a resident of Florida. He is the brother of the late Rafael Trujillo Molina, quondam ruler of the Dominican Republic. In this action, he seeks recovery of an alleged credit balance in the sum of $1,737,255 plus interest, in a checking account created and maintained since 1956 with the defendant’s Santo Domingo branch. Defendant does not deny the existence of the account or the amount or the debtor-creditor relationship arising therefrom insofar as these facts and resultant legal consequences reflect the circumstances before December 1, 1961. The bank urges consideration of the nature of the contractual rights and obligations of the parties and stresses that the account represented moneys in Dominican currency, the peso, which it was obligated to repay to the plaintiff only in the Dominican Republic, governed by Dominican law.
The applicable Dominican law was significantly revised following the overthrow and expulsion of the Trujillo regime in the latter part of 1961.
On December 1, 1961, the Superintendent of Banks of the Dominican Republic, by letter to the defendant’s Santo Domingo branch, ordered the bank “ to completely freeze the funds and securities belonging, without any exception, to the members of the Trujillo family”. This directive advised that “ [a]s a result of the above freezing, such funds cannot be drawn on or withdrawn, either directly or indirectly, by the depositors thereof. ’ ’
Submitting to this order, the bank refused to honor checks presented for payment subsequent to the December 1,1961 date.
Thereafter, on December 29, 1961, the Dominican Constitution was amended to authorize confiscation of property ‘ ‘ in case of abuse or usurpation of power, or of any public office for personal enrichment or enrichment of others ” (art. 8, par. 9). On January 4,1962, the Council of State of the Dominican Republic enacted Law No. 5785, confiscating the property of Rafael Trujillo Molina, his widow, and their children (art. 1) and the property of specifically named relatives and associates of Rafael Trujillo Molina, including that of his brother, plaintiff Romeo Trujillo Molina (art. 2). The enactment authorized the G-eneral Bureau of Administration, Control and Recovery of Property, ‘ ‘ to adopt all necessary measures for the implementation of this law ” (art. 4; see, also, reaffirmation by Law No. 48 “ providing the final, unappealable confiscation of the property belonging to the family Trujillo Molina, and all its relatives ”, Nov. 6, 1963). By letter dated January 7, 1962, the Director of Administration, Control and Recovery of Property directed the Santo Domingo branch of defendant bank “ to immediately *691 place at the disposal of the National Treasury, through this General Bureau, all the assets and property of any nature whatsoever now in the possession of your Bank, including bank deposits, credits, shares of stock, bonds, etc., belonging to: * * * Borneo Trujillo Molina * * “In what concerns any bank deposits,” the letter instructed, “ the remittance of same shall be made by a check of the Management issued in favor of the National Treasury ”.
In accordance with the aforesaid directive, on January 10, 1962, the bank paid the pesos held to the credit of plaintiff’s checking account to the Dominican National Treasury.
Plaintiff sues, in the first cause of action, to recover the credit balance as a debt owed by defendant Canadian banking corporation, and, in the second cause of action, for conversion. As one of his postulates supporting right to recovery against this defendant, plaintiff who, for political reasons, cannot return to the Dominican Republic to press his claim, denies that defendant’s Santo Domingo branch constitutes a separate entity insofar as the debt or the debtor-creditor relationship is concerned.
On the foregoing facts, the defendant’s assertion of forum non conveniens must be rejected, but on the other ground, pursuant to CPLR 3211 (subd. [a], par. 7) in conjunction with CPLR 3211 (subd. [c]), defendant’s position must be sustained.
This case, even recognizing that the second cause of action sounds in tort, presents such “ special and unusual circumstances ” (the alternatives of instituting suit in Canada or in the Dominican Republic) as to favor “ acceptance of the suit ” (Taylor v. Interstate Motor Frgt. System, 309 N. Y. 633, 636 ; see, as to the first cause of action, Katz v. Liston, 22 A D 2d 205; cf. Glendon v. Glendon, 24 A D 2d 492).
The second part of defendant’s motion raises a more complex question, viz., the legal effect of the confiscation by the Dominican Republic of a Dominican citizen’s credit balance in a Santo Domingo branch of defendant bank which paid this balance to the Dominican treasury.
Two factors are determinative, to Avit, section 204-a (subd. 3, par. [a]) of the New York Banking Law and decisional precedents which require the application of the act-of-State doctrine.
Section 204-a (subd. 3, par. [a]) of the New York Banking Law provides, in pertinent part: “ (a) * * * any foreign banking corporation doing business in this state under a license issued by the superintendent in accordance with the provisions of this chapter shall be liable in this state for contracts to be performed at its office or offices in any foreign country, and for *692 deposits to be repaid at such office or offices, to no greater extent than a bank, banking corporation or other organization or association for banking purposes organised and existing under the laws of such foreign country would be liable under its laws. The laws of such foreign country for the purpose of this subdivision shall be deemed to include all acts, decrees, regulations and orders promulgated or enforced by a dominant authority asserting governmental, military or police power of any kind at the place where any such office is located, whether or not such dominant authority be recognised as a de facto or de jure government ” (emphasis supplied).
Obviously, the Dominican constitutional provision, statutory enactment and regulation referred to herein providing for the confiscation of this plaintiff’s credit balance constitute the formal law of the Dominican Republic, whatever objections to validity may exist.
Under the act-of-State doctrine, this court is precluded from testing the validity of the laws in question. The Supreme Court of the United States in Banco Nacional de Cuba v. Sabbatino (376 U. S. 398, 428) has held that “ The Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government, extant and recognized by this country at the time of suit, in the absence of a treaty or other unambiguous agreement regarding controlling legal principles, even if the complaint alleges that the taking violates customary international law.” “We are constrained,” the court stressed (p. 425), “ to make it clear that an issue concerned with a basic choice regarding the competence and function of the Judiciary and the National Executive in ordering our relationships with other members of the international community must be treated exclusively as an aspect of federal law. ’ ’
Without further elaboration of the United States Supreme Court’s pronouncement with regard to the act-of-State doctrine as “ federal law ”, it should be noted that the Court of Appeals of New York had, even prior to Banco Nacional de Cuba v. Sabbatino (supra), declared that “ The courts of one independent government will not sit in judgment upon the validity of the acts of another done within its own territory, even when such government seizes and sells the property of an American citizen within its boundaries ” (Salimoff & Co. v. Standard Oil Co., 262 N. Y. 220, 224). It is remembered that the plaintiff is not an American citizen.
Conformably, the liability of the defendant bank is, pursuant to section 204-a (subd. 3, par. [a]) of the Banking Law, to be determined by the liability of its Santo Domingo branch under *693 Dominican law. Plaintiff fails to demonstrate that such liability was not fully extinguished upon payment to the National Treasury of the Dominican Republic of the credit balance then owed to plaintiff.. (See decision by Dominican Republic Supreme Court of Justice denying appeal from confiscation by Dr. Francisco Nicolas Savinon Trujillo, decided December 14, 1964; defendant’s exhibit.)
Nor in view of the 1965 amendment of the so-called “ Sabbatino Amendment (Foreign Assistance Act of 1961, as amd. by Foreign Assistance Act of 1965, 79 U. S. Stat. 659; U. S. Code tit. 22, § 2370, subd. [e], par. [2]) need this court become embroiled in the many questions raised by the Act of Congress, in modification of the holding in Banco Nacional de Cuba v. Sabbatino (376 U. S. 398, supra), that “ no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law ’ ’. The Report of the Committee on Foreign Relations on the Foreign Assistance Act of 1965 (S. Rep. No. 170, 89th Cong., 1st Sess. [1965], p. 19) explains that the purpose of the amendment was “ to make it clear that the law does not prevent banks * * * from using the act of state doctrine as a defense to multiple liability upon any contract or deposit * * * where such liability has been taken over or expropriated by a foreign state”. (See Friedmann, National Courts and the International Order: Projections on the Implications of the Sabbatino Case, 34 George Washington L. Rev., 443 [March, 1966]; Lowenfeld, The Sabbatino Amendment-International Law Meets Civil Procedure, 59 Amor. J. of Int. Law, 899, 903 [1965].)
That part of defendant’s motion for an order, pursuant to CPLR 3211 (subd. [a], par. 7), dismissing each cause of action of the complaint, is granted. Plaintiff’s cross motion for an order, pursuant to CPLR 3212, granting summary judgment in his favor is denied.