OPINION OF THE COURT
Jasen, J.
On this appeal, we are asked to decide whether, in light of the Act of State doctrine and the Bretton Woods Agreement, a Panamanian bank can maintain an action in this State against a Turkish bank on the basis of a promissory note that designates New York as the proper jurisdiction *320 for resolution of any disputes. A secondary issue presented by this appeal is whether there was proper service of process on the defendant.
The promissory note which plaintiff, Weston Banking Corporation, a Panamanian banking corporation, seeks to enforce was signed by representatives of the defendant on July 9, 1976 in Istanbul, Turkey. Pursuant to its terms, defendant bank undertook an obligation to repay plaintiff principal in the amount of 500,000 Swiss francs, plus interest calculated at 9% per annum. The interest was to be paid semiannually and the principal was due on July 9, 1979. The note also provided that: “Payment of principal and interest shall be made at the offices of the CHEMICAL BANK * * * New York City, New York, U.S.A., by means of a cable transfer to Switzerland in Lawful currency of the Swiss Federation.” Such payments were to be “made clear of all restrictions of whatsoever nature imposed thereon by, outside of bilateral or multilateral payment agreements or clearing agreements which may exist at the time of payment and free and clear of and without deductions for any taxes, levies, imposts, deductions * * * imposed * * * by the Republic of Turkey”.
Under the terms of the note, the defendant designated Chemical Bank, International Division, New York City, as its legal domicile and accepted the jurisdiction of New York courts “in the event of Judicial or extrajudial [sic] claim or summons of any nature”. The holder was also given the option to bring suit against the maker in the Turkish courts. The final paragraph of the note indicates that the note “is issued under communique number 164, published by the Ministry of Finance.”
Communique No. 164 amended Decree No. 17 of the Turkish Ministry of Finance. The .decrees allow banks in Turkey to open convertible Turkish lira deposit accounts (CTLDs) when the bank obtains foreign currency by borrowing or through deposits. The bank is required under Turkish law to transfer the foreign currency to the Central Bank of Turkey. The Central Bank credits the privately owned bank with the equivalent amount of Turkish lira. These amounts are then available for investment by the banks. This program was apparently designed to encour *321 age Turkish banks to seek foreign investments and to help stabilize the Turkish balance of payments by making available to the Turkish government more foreign currency. The banks benefited because the Turkish government covered any costs incurred by a fluctuation in the exchange rates between the currencies.
In July, 1976, the defendant Turkish bank borrowed 500,000 Swiss francs from the plaintiff bank and used these funds to establish a CTLD. As the interest became due, payments were made in Swiss francs at Chemical Bank’s International Division in New York City. However, when the note was presented for payment in July, 1979, defendant refused to pay the principal on the ground that the then existing Turkish banking regulations barred it from paying back the loan in Swiss francs.
This action was then commenced in New York by serving a summons on a bank officer at Chemical Bank in New York City; no effort was made to serve the defendant directly. It is not disputed that the summons and accompanying papers were promptly forwarded by Chemical Bank to the defendant.
The plaintiff moved, in lieu of a complaint, for summary judgment on the basis of an instrument for the payment of money only. (CPLR 3213.) The defendant cross-moved for a dismissal of the action, or, in the alternative, for summary judgment on the grounds that: the service of process was improper; the Act of State doctrine barred such a claim; the Bretton Woods Agreement barred New York from entertaining this action involving Turkish monetary regulations; and the existence of another similar action pending in a different jurisdiction barred this action.
Special Term denied the motions, finding that factual questions existed regarding whether Chemical Bank had been designated an agent for service of process; whether the parties agreed to what law would control; and whether nonpayment was occasioned by Turkish banking regulations.
The Appellate Division modified, on the law, and granted plaintiff’s motion for summary judgment. Although Chemical Bank had not been specifically appointed *322 as the defendant’s agent for service of process, the court held that such appointment was “implicit in its establishment of defendant’s legal domicile at Chemical Bank in New York.” That court further held that the Act of State doctrine could not be invoked by one who had entered an agreement which specified both the proper jurisdiction to resolve disputes and indicated that the intention of the parties was to avoid any restrictions which might be imposed by the defendant’s home government. Similarly, the court held that the Bretton Woods Agreement was not applicable because the repayment of the note did not involve any use of Turkish currency in violation of Turkish law. Finally, the court noted that the inability of the defendant to pay in Swiss francs went to the enforceability of the judgment and not to whether that judgment should be entered.
 We affirm, but on a somewhat different rationale from that used by the Appellate Division.
It is not disputed that the defendant failed to pay the principal amount due plaintiff. Nor is the validity of the underlying note disputed. The heart of the defenses raised is that Turkish monetary regulations enacted subsequent to the date of the note make it legally impossible for the defendant bank to repay the loan in Swiss francs and that plaintiff’s only “recourse is to be repaid in Turkish lira.” Furthermore, the defendant contends that the promulgation of this regulation is an act of State and as such is beyond the review of New York courts. Similarly, defendant argues that the policy of the United States, as incorporated in the Bretton Woods Agreement (US Code, tit 22, § 286; 59 US Stat 512; 60 US Stat 1411), is to refrain from any interference with the monetary regulations of signatory countries.
The Act of State doctrine, simply stated, provides that “the courts in the United States will not inquire into the validity of the acts of a foreign government done within its own territory.” (French v Banco Nacional de Cuba, 23 NY2d 46, 52.) The underlying principle of this doctrine is that each sovereign State is “ ‘bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the *323 government of another done within its own territory.’” (French v Banco Nacional de Cuba, 23 NY2d 46, 52, supra, quoting Underhill v Hernandez, 168 US 250, 252.) This concept was reaffirmed by the Supreme Court in Banco Nacional de Cuba v Sabbatino (376 US 398, 416), where that court recognized that the Act of State doctrine has “ ‘constitutional’ underpinnings” arising “out of the basic relationships between branches of government in a system of separation of powers.” (Banco Nacional de Cuba v Sabbatino, 376 US 398, 423, supra.) Thus, the Supreme Court further noted that in order to assure that the individual States did not circumvent the dictates of international law, the Act of State doctrine and “our relationships with other members of the international community must be treated exclusively as an aspect of federal law.” (Banco Nacional de Cuba v Sabbatino, supra, at p 425.)
Both the Federal and State courts have been called upon to decide the applicability of the doctrine in various factual situations. In French v Banco Nacional de Cuba (23 NY2d 46, supra), this court held that the Act of State doctrine was applicable and, thus, a dismissal of the plaintiff’s cause of action against the Cuban National Bank was required. The bank, we held, was acting pursuant to Cuban currency regulations and the courts of this State were required, under the Act of State doctrine, to defer to those regulations even though we might have found them to be invalid if review were permissible. Thus, the court concluded that the plaintiff’s only recourse to obtain the tax exemption certificates he sought was through diplomatic channels. It should be noted that two preliminary factual conclusions were reached in deciding that the Act of State doctrine was applicable: first, that the new regulation controlled the question before the court; and, second, that plaintiff’s claims were based on a contract signed and executed in Cuba and governed by Cuban law.
We have, however, refused to apply the doctrine when the debt sought to be enforced was not located within the State whose acts are said to be dispositive. (Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220, 228, cert den 423 US 866.) Thus, a change in Ugandan law, which sought to prevent an Israeli company from collecting against letters *324 of credit issued by an Ugandan bank, but payable out of funds held by the defendant bank in New York, was not found to be controlling under the Act of State doctrine. “The doctrine is not applicable here”, we held, “since a debt is not ‘located’ within a foreign State unless that State has the power to enforce or collect it.” (Zeevi & Sons v Grindlays Bank [Uganda], supra, at p 228.)
Similarly, the Federal courts have limited the applicability of the Act of State doctrine to governmental action affecting property within that government’s territory. (Republic of Iraq v First Nat. City Bank, 353 F2d 47, cert den 382 US 1027.)
Turning then to the facts of this case, we must determine whether the note and the regulation which defendant contends restricts the repayment of the promissory note require application of the Act of State doctrine. The note was executed in Istanbul, Turkey, and states that it is “issued under communique number 164” of the Turkish Ministry of Finance. Defendant contends that this makes the note subject to all Turkish monetary controls, even those enacted subsequent to the date of the note. Plaintiff, on the other hand, points out that Communique No. 164 merely authorizes Turkish banks to engage in this type of transaction and that the note specifies that repayment is not subject to regulation by the Turkish government. We wuuld add that the note requires payment to be made at Chemical Bank in New York City and designates New York law to be controlling.
We conclude that on these facts the Act of State doctrine does not constitute a defense to plaintiff’s action to recover on this note. A debt is not located within a foreign State unless it has the power at the instance of an interested party to enforce or collect it. (Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220, 228, supra; Republic of Iraq v First Nat. City Bank, 353 F2d 47, 51, supra.) Here, the debt is equally capable of being enforced against the defendant’s assets in New York as it is capable of being enforced against its assets in Turkey, and the State of Turkey has no power to enforce collection of this debt. The mere fact that this suit might have been commenced in Turkey, instead of New York, does not bar the *325 action. Indeed, the note provides that New York shall be the proper jurisdiction for dispute resolution. Such a provision naturally contemplates enforcement of any judgment which would resolve the dispute. Thus, the Act of State doctrine does not bar this action.
Whether or not extraterritorial effect will be given to the Turkish regulation depends on whether it controls the issue presented to this court and whether it is consistent with the policies of this State. (Zeevi & Sons v Grindlays Bank [Uganda], supra, at pp 227-228; Republic of Iraq v First Nat. City Bank, supra, at p 51.) The initial inquiry must be to ask what the regulation provides.
Defendant has provided the court with translated and certified copies of all pertinent Turkish law and plaintiff has raised no claim concerning the propriety of these documents. Our reading of those regulations, whether individually or as representative of a continuous Turkish monetary policy, indicates that there is no per se ban imposed on all Turkish banks preventing them from paying this type of promissory note with foreign currency. The record indicates that the directive of the Ministry of Finance does not bar payment of the note, but, rather, establishes a program under which CTLDs could be restructured through the Turkish Central Bank. Defendant’s own counsel in responding to plaintiff’s inquiry about the effect of the restructuring program stated: “The Central Bank is obligated to pay interest only after CTLDs are included in the restructuring under the CTLD Credit Agreement. All CTLDs not included in the restructuring will remain obligations of the commercial banks in Turkey with which they are made.” Plaintiff denies ever agreeing to have this note included in the restructuring program. Defendant makes no claim and offers no proof to the contrary; in fact, the record is devoid of any indication that the regulations on which defendant relies are applicable to this note.
Thus, we need not reach the question of whether these regulations comport with this State’s policy so that they should be given extraterritorial application. It is sufficient to note that defendant has failed to introduce any documentation to support its contention that Turkish law for *326 bids the payment of a promissory note designating that payment shall be made in Swiss francs at a bank incorporated in the United States.
This failure of proof also reaches to the validity of defendant’s claim that the Bretton Woods Agreement bars this action. The Bretton Woods Agreement (US Code, tit 22, § 286; 59 US Stat 512; 60 US Stat 1411) is an international treaty to which both the United States and Turkey are signatories. The purpose of the Agreement, as stated in article I (60 US Stat 1401), is to promote international monetary co-operation, exchange stability and “[t]o assist in the establishment of a multilateral system of payments in respect of current transactions between members and in the elimination of foreign exchange restrictions which hamper the growth of world trade.” (Art I [iv].)
The defendant relies on article VIII (§2, subd [b]) of the Agreement as a defense to this action, which provides that “[ejxchange contracts which involve the currency of any member and which are contrary to the exchange control regulations of that member maintained or imposed consistently with this Agreement shall be unenforceable in the territories of any member.” This article renders unenforceable any agreement involving the currency of a member State which is contrary to “that member’s” currency control regulations. The promissory note involved here obligated the defendant to repay the plaintiff the principal sum loaned in Swiss francs and not Turkish lira.
Were the currency regulations to ban payment in foreign currencies when a CTLD was liquidated, a different case would have been presented. In this case, however, the regulation merely permits a Turkish bank to restructure the debt. As we previously stated, there is no proof, in this record, that if the debt were not restructured, the bank would be barred from repaying the plaintiff in Swiss francs as required by the terms of the note. Therefore, although we recognize the validity of the Bretton Woods Agreement and its potential controlling effect over international currency transactions, on the record before us, we do not find it to be applicable.
Defendants, having abandoned their claim that the action pending in Switzerland barred this action, raise only *327 one additional defense — that is, that the service of process was defective because it was made on Chemical Bank in New York City, rather than on the defendant in Turkey. Although the note designates Chemical Bank as defendant’s domicile, defendant argues that the note did not designate Chemical Bank as its agent for service of process, nor was any other writing to that effect filed. (CPLR 318.)
The Appellate Division recognized that the note did not “explicitly appoint Chemical Bank defendant’s agent for service of process”, but held that “the appointment is implicit in its establishment of defendant’s legal domicile at Chemical Bank in New York” for the purposes of “judicial or extrajudicial claim[s] or summons of any nature.” We agree.
The language of the note is broad enough to be reasonably interpreted to indicate an intention on the part of the parties that Chemical Bank serve as the agent for all aspects of this transaction including for service of process. In the past, we have noted that an agent for the service of process can be appointed informally by a corporation and that having done so, the corporation “cannot escape the consequences of establishing alternative procedures which it may prefer.” (Fashion Page v Zurich Ins. Co., 50 NY2d 265, 272.) Since the service of process was made pursuant to the implicit direction of the promissory note itself, the defendant cannot now claim to have been improperly served.
Finally, since plaintiff did not cross-appeal from that part of the Appellate Division’s order which provided for the payment of interest at a rate of 6% per annum, rather than 9%, after the date the principal became payable, we do not now address that issue.
Accordingly, the order of the Appellate Division should be affirmed.