OPINION OF THE COURT
Kaye, J.
Rosa Manas y Pineiro (Manas), a Cuban national, in 1958 purchased five certificates of deposit from the Marianao, Cuba branch of defendant Chase Manhattan Bank (Chase), and first presented them for payment at Chase’s New York office in 1974. The issue on this appeal is whether Chase is excused from payment to Manas because, in September, 1959, the Cuban government confiscated Manas’ accounts and Chase surrendered the funds representing the certificates. Because the certificates were payable in Cuba and Chase at the time of the confiscation was present there, the Cuban government had the power to enforce and collect Chase’s debt to Manas in Cuba, and the Act of State doctrine precludes inquiry by this court into the propriety of a confiscation directed particularly at Manas’ assets in Cuba. Having once made payment, Chase is not liable to pay on the certificates of deposit a second time.
Plaintiff, Esther Garcia Manas Perez, is the administratrix of Manas’ estate. Manas was the wife of a cabinet minister in the government of Cuba’s former leader, General Fulgencio Batista. Between May and December, 1958, she purchased five non-negotiable certificates of deposit, totaling $227,336.47, from Chase by depositing Cuban pesos in that amount at Chase’s branch in Marianao, a suburb of Havana. The certificates provided for the payment of 3% interest and had maturity dates between April and June, 1959. Plaintiff claims that political uncertainty *466 in Cuba motivated the purchase of these certificates from a worldwide bank, and that Manas was repeatedly assured by a Chase employee that the certificates could be redeemed wherever Chase had an office, particularly in the United States. However, no place of payment was specified in the certificates. The certificates provided only that payment was to be made in “moneda nacional,” or national currency.
When Fidel Castro assumed control on January 1,1959, Manas’ husband took asylum in the Colombian embassy in Havana and thereafter left Cuba for Colombia. Manas remained in Cuba for the first half of 1959, visited her husband in Colombia, returned to Cuba for approximately four months in 1960, joined her husband in Mexico, and both later relocated to the United States. In that period no effort was made to redeem the certificates.
By Law No. 78 of February 13, 1959, the Cuban government created the Ministry of Recovery of Misappropriated Property “to recover property of any type which has been removed from the National Wealth and obtain the complete restoration of the proceeds of unjust enrichments obtained under the cover of the Public Power.” The minister was given the power to conduct investigations, freeze bank accounts, take possession of property, and enact “final decisions” returning the confiscated property to the “National Wealth.” Chase was thereafter directed to freeze accounts belonging to certain former government officials and their families, and in September, 1959 the ministry ordered Chase to close such frozen accounts — including specifically those represented by Manas’ certificates which had by then reached maturity — and remit the proceeds to the ministry. In compliance with that directive Chase turned funds in the amount of Manas’ certificates over to the government. Approximately a year, after the confiscation of Manas’ assets, on July 6, 1960, the Castro government enacted Law No. 851, providing for nationalization of United States firms in Cuba, and by Resolution No. 2 of September 17, 1960, the government nationalized all of Chase’s Cuban branches.
It was not until January, 1974 that Manas, by then residing in the United States, for the first time presented *467 her certificates to Chase’s office in New York and demanded payment, which was refused. Manas instituted this action in July, 1974 by motion for summary judgment in lieu of complaint, and Chase cross-moved for summary judgment. Both motions were denied, and the Appellate Division affirmed (52 AD2d 794). Chase subsequently removed the case to the United States District Court for the Southern District of New York, but the action was remanded (443 F Supp 418).
The action proceeded to trial in June of 1980. The following three questions were submitted to the jury:
“1. What was the intention of [Manas] and [Chase] with regard to the currency with which the certificates of deposit were to be repaid? 1. U.S. dollars; 2. Cuban pesos.
“2. What was the intention of [Manas] and [Chase] with regard to the place of presentment of the certificates of deposit? 1. New York only; 2. Marianao, Cuba only; 3. any branch of the defendant Chase anywhere in the world, including New York and Marianao, Cuba; 4. any branch of defendant Chase anywhere in the world, excluding Marianao, Cuba.
“3. Were [Manas’] funds on deposit in defendant Chase in Marianao confiscated by the Cuban government’s Ministry of Misappropriated Funds?”
The jury found that the certificates of deposit were repayable in United States dollars, that the certificates could be presented to any Chase branch in the world, including New York and Cuba, and that Manas’ funds on deposit in Chase’s Marianao branch were confiscated by the Ministry of Misappropriated Funds.
Both parties then moved for judgment. In view of the jury’s findings, Trial Term held that Chase’s debt to Manas had its situs in Cuba as the certificates were capable of being repaid in Cuba and Chase’s Cuban branches were open and operating subject to the laws and jurisdiction of the Cuban government at the time of the September, 1959 confiscation. Trial Term thereupon entered judgment for Chase in December, 1980, concluding:
“In the case at bar, both the persons and the res were within the territorial dominion of the acting State at the *468 time of the confiscatory taking. In this court’s opinion, under the facts as established at trial, the situs of the debt herein was Cuba. In order for this debt to be beyond Cuban jurisdiction in this case, it would have been necessary for the jury to have found that the place of presentment was only outside of Cuba. The jury finding that payment could be anywhere did not change the situs of this debt from Chase in Cuba while it functioned there. It only created an option for plaintiff to collect the debt elsewhere prior to the confiscation. Although it is true, as asserted by plaintiff, that the parent bank is ultimately liable for the obligations of the branch (Sokoloff v National City Bank of N. Y., 130 Misc 66, affd 223 App Div 754, affd 250 NY 69), such a liability does not alter the situs of the debt. When the branch’s liability is extinguished, as under the facts herein, the parent is relieved as well.
“Accordingly, this court holds that the judicial self-limiting act of State doctrine applies herein as the confiscation of plaintiff’s funds was an official act of a sovereign government fully executed within its own jurisdiction and whose validity this court must refuse to inquire into, thereby implicitly giving the act extraterritorial effect.” (106 Misc 2d 660, 666-667.)
The Appellate Division reversed (93 AD2d 402), holding that: (1) the Act of State doctrine applies to the taking of intangible property such as Chase’s debt to Manas only “where the obligation is found to be situated exclusively within the foreign State”; (2) “the Act of State doctrine should not be, and apparently never has been, applied to relieve an American bank of obligations owed by its branches to depositors” (93 AD2d, p 409); and (3) under the rationale of Vishipco Line v Chase Manhattan Bank (660 F2d 854, cert den 459 US 976), when Chase’s Cuban branches ceased operation due to the bank nationalization in 1960, Chase was not relieved from its obligation to redeem the certificates at its other branches, even though the nationalization decree provided that the Cuban government (through Banco Nacional de Cuba) assumed the liabilities of Chase’s Cuban branches. Chase appeals to this court from that determination, and plaintiff cross-appeals from that portion of the Appellate Division’s order *469 relating to the computation of interest on the certificates. Because the Appellate Division’s analysis erroneously ignores the impact of the September, 1959 confiscation specifically seizing Manas’ deposits before Chase’s Cuban branches ceased operation, and otherwise misperceives the applicability of the Act of State doctrine, we now reverse.
The basic premise of the Act of State doctrine is that “the courts of one country will not sit in judgment on the acts of the government of another done within its own territory.” (Underhill v Hernandez, 168 US 250, 252; Banco Nacional de Cuba v Sabbatino, 376 US 398, 416; see Restatement, Foreign Relations Law of United States 2d, § 41.) Whether the property seized is tangible or intangible is not dispositive. (Menendez v Saks & Co., 485 F2d 1355, 1364, revd on other grounds sub nom. Alfred Dunhill of London v Cuba, 425 US 682.) The doctrine applies when the foreign sovereign’s act amounts to a taking of property within its own borders. (Republic of Iraq v First Nat. City Bank, 353 F2d 47, cert den 382 US 1027.)
We must first determine whether the property taken by the Cuban government — here, Chase’s debt to Manas — was within its borders. For purposes of the Act of State doctrine, a debt is located within a foreign State when that State has the power to enforce or collect it. (Weston Banking Corp. v Turkiye Garanti Bankasi, A. S., 57 NY2d 315, 324; Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220, 228, cert den 423 US 866; Menendez v Saks & Co., 485 F2d 1355, 1364, supra; United Bank v Cosmic Int., 392 F Supp 262, affd 542 F2d 868, 873.) Since Harris v Balk (198 US 215, 222-223),[1] the power to enforce or collect a debt has been dependent on the presence of the debtor. If the debtor is present in the foreign State and the debt is payable there, the foreign sovereign then has power to enforce or collect it, and a confiscation of that debt amounts to a seizure of property within that sovereign’s borders.
At the time the Cuban government confiscated Manas’ deposits in September, 1959, the debtor (Chase) was present in Cuba. Its Cuban branches were open and operating under Cuban authority, and the debt owed by Chase to *470 Manas — as the jury found — was payable at any Chase bank in the world including the Marianao branch where it was confiscated. While the certificates had by that time matured, and could have been redeemed elsewhere, Manas had taken no steps to redeem them in or out of Cuba. Where, as here, Chase paid over the full amount of its debt pursuant to the direction of the Cuban government, a direction which under the Act of State doctrine, is beyond our review, Chase is relieved of liability on any subsequent demand by Manas for the funds. (Trujillo-M v Bank of Nova Scotia, 51 Misc 2d 689, 692-693, affd 29 AD2d 847, cert den 393 US 982.)[2]
The fact that Chase’s debt to Manas was not exclusively payable in Cuba, but could in addition have been paid in other countries, does not affect this result. Manas bargained for and received the right to collect the debt from Chase at any of its branches throughout the world. While the debt contemplated alternate places of payment and thus had multiple situs, because it constituted but a single obligation to pay, payment at one of the places chosen for performance extinguished the debt at all of its situses. Manas herself surely could not have redeemed the certificates of deposit in Cuba and subsequently received payment on those same certificates at a Chase branch in another country. Chase’s debt to Manas was satisfied by payment to the Cuban government in response to its confiscation of Manas’ accounts, and at that point the debt, wherever else it had been payable, was extinguished.
Only when a debt or other obligation is not payable at all in the confiscating State would the Act of State doctrine be inapplicable. In such situations, the foreign sovereign has no power to enforce or collect the debt. (Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220, supra; Republic of Iraq v First Nat. City Bank, 353 F2d 47, cert den 382 US 1027, supra.) Here, however, as the jury found, Chase’s *471 debt to Manas was payable in Cuba, giving Cuba the jurisdiction to collect and enforce it, which the Cuban government exercised. By reason of the Act of State doctrine the legitimacy of the confiscation is beyond our review.[3]
The Hickenlooper amendment (US Code, tit 22, § 2370, subd [e], par [2]), which operates to preclude the application of the Act of State doctrine in certain circumstances, has no effect in this case. The amendment provides as follows: “Notwithstanding any other provision of law, no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law in a case in which a claim of title or other right to property is asserted by any party including a foreign state (or a party claiming through such state) based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of that state in violation of the principles of international law, including the principles of compensation and the other standards set out in this subsection: Provided, That this subparagraph shall not be applicable (1) in any case in which an act of a foreign state is not contrary to international law or with respect to a claim of title or other right to property acquired pursuant to an irrevocable letter of credit of not more than 180 days duration issued in good faith prior to the time of the confiscation or other taking, or (2) in any case with respect to which the President determines that application of the act of state doctrine is required in that particular case by the foreign policy interests of the United States and a suggestion to this effect is filed on his behalf in that case with the court.”
The Hickenlooper amendment does not apply to confiscations by a foreign State of the property of its own nationals within its borders, since such confiscations are “not contrary to international law” (F. Policio y Compañía, S.A. v *472 Brush, 256 F Supp 481, 486-487, affd 375 F2d 1011, cert den sub norm. Brush v Republic of Cuba, 389 US 830), or to expropriated property that remains in the confiscating country without coming within the territorial jurisdiction of the"United States (Banco Nacional de Cuba v First Nat. City Bank, 431 F2d 394, 400-402, revd on other grounds 406 US 759). Here, Manas was a Cuban citizen at the time of the confiscation and was either present in Cuba or only temporarily absent at the time of confiscation, and the debt, once seized in Cuba, did not come within this country’s jurisdiction. Accordingly, the Hickenlooper amendment does not preclude application of the Act of State doctrine in this action.
Nor are the decisions in Sokoloff v National City Bank (239 NY 158) and Vishipco Line v Chase Manhattan Bank (660 F2d 854, cert den 459 US 976, supra), in any way inconsistent with the result we reach today.[4] In both Sokoloff and Vishipco, the banks were not entitled to rely upon a foreign sovereign’s order confiscating a depositor’s property where the bank’s branches in the foreign State had ceased operations prior to the confiscation order. The situs of the banks’ debts to their depositors was thus no longer in the foreign States and the confiscation order directed at the depositor’s property was of no effect. In Sokoloff this court explained that a “decree of confiscation directed against depositors does not reduce the liabilities of a bank which has already yielded up its assets in virtue of a decree of confiscation directed against itself.” (239 NY 158, 169.) And in Vishipco the Second Circuit wrote (p 862): “More importantly, however, upon Chase’s departure from Vietnam the deposits no longer had their situs in Vietnam at the time of the confiscation decree. As we have said in the past, ‘[f]or purposes of the act of the state doctrine, a debt is not “located” within a foreign state unless that state has the power to enforce or collect it.’ Menendez v. Saks and Co., 485 F.2d 1355, 1364 (2d Cir. 1973), rev’d on other grounds sub nom. Alfred Dunhill of London, Inc. v. Republic of Cuba, 425 U.S. 682, 96 S.Ct. 1854, 48 L.Ed.2d 301 (1976). The rule announced in Harris v. Balk, 198 U.S. 215, *473 25 S.Ct. 625, 49 L.Ed. 1023 (1905), continues to be valid on this point: the power to enforce payment of a debt depends on jurisdiction over the debtor. Since Chase had abandoned its Saigon branch at the time of the Vietnamese decree, and since it had no separate corporate identity in Vietnam which would remain in existence after its departure, the Vietnamese decree would not have had any effect on its debt to the corporate plaintiffs.” But in the case before us it is undisputed that at the time Manas’ accounts were confiscated in September, 1959, Chase’s branches in Cuba were open and operating, and the certificates had matured. Manas thus had the opportunity prior to the seizure to redeem the certificates in Cuba or at any of Chase’s branches throughout the world. Since Chase’s debt to Manas was extinguished before the bank was nationalized, there is no occasion to apply the rationale of Sokoloff and Vis hipeo.
In sum, the situs of Manas’ property — the debt due from Chase on her certificates — was Cuba at the time of the government’s confiscation of her property and Chase’s payment. The confiscation was an act of a foreign sovereign affecting the property of one of its own nationals within its own borders, and cannot be examined in this court. Having paid the full amount of the certificates, Chase was relieved of liability to make a second payment on those certificates when Manas presented them some 15 years later.[5]
Accordingly, the order of the Appellate Division should be reversed, and Trial Term’s judgment for defendant Chase reinstated, and plaintiff’s cross appeal dismissed as academic.

. Although another aspect of Harris v Balk has been overruled (see Shaffer v Heitner, 433 US 186), the debt-situs holding remains unimpaired.

. The Appellate Division’s conclusion that “the Act of State doctrine * * * apparently never has been, applied to relieve an American bank of obligations owed by its branches to depositors” (93 AD2d, p 409) ignores the thrust of the decision in Trujillo. While the bank in Trujillo was a Canadian bank, the question presented was the liability of its New York office to repay deposits confiscated from one of its foreign branches pursuant to an order directed at plaintiff’s accounts. The court in Trujillo determined that under the Act of State doctrine the bank could not be liable to plaintiff on his subsequent demand for repayment.

. Given this result, we do not reach the applicability of subdivision 1 of section 138 and section 204-a (subd 3, par [a]) of the Banking Law. We note that in Garcia v Chase Manhattan Bank (SDNY, June 7, 1983), a case similar on its facts, the Federal District Court found the Act of State doctrine inapplicable “since the situs of Chase’s obligation to plaintiff was outside of the jurisdiction of Cuba,” citing as its authority the Appellate Division decision which we now reverse. Garcia on March 28,1984 was affirmed by the Court of Appeals for the Second Circuit.

. The Trial Term decision denying recovery to plaintiff is in fact cited in Vishipco (660 F2d 854, 863), and the court points out the factual distinction between the two cases.

. The dissent misapprehends our holding. We hold that in the circumstances disclosed in this record as crystallized by the verdict of the jury, the rights of plaintiff evidenced by the certificates of deposit issued by Chase were located in Cuba at the time of the confiscation specifically directed against Manas’ assets, and that this act of the Cuban government is beyond our review. We do not hold that any purported confiscation by a foreign sovereign of deposits at American bank branches would be accorded similar effect. The certificates here were both issued and payable in Cuba, and therefore subject to enforcement and collection by the foreign sovereign. The circumstance that the Chase branch in Cuba was nationalized a year after confiscation of the certificates is irrelevant.