BANK TEJARAT, Plaintiff,

v.

Abdol Hossein VARSHO–SAZ; Hossein Kamrani; Massoud Nosrati; Abbas Kamrani; Mahvash Kamrani; Ommide Company, Inc.; Bank of America, N.T. & S.A.; Wells Fargo Bank, N.A.; Security Pacific National Bank; Great Western Bank, Defendants.

No. 89–1969–SVW.

United States District Court,
C.D. California.

Oct. 12, 1989.

As Amended Nov. 3, 1989.

Robert V. Kuenzel, Henry Ben–Zvi and Nicholas Boylan, Proskauer Rose Goetz & Mendelsohn, Los Angeles, Cal., for plaintiff.

H. Roy Jeppson and Robyn F. Stalk, Law Office of H. Roy Jeppson, and Richard H. Kirschner, Los Angeles, Cal., for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

WILSON, District Judge.

Plaintiff Bank Tejarat ("the bank") moved this court to strike the third, fourth, fifth and sixth affirmative defenses contained in defendant Abdol Hossein Varsho–Saz's ("Varsho–Saz") First Amended Answer. At a hearing on August 11, 1989, this court struck Varsho–Saz's fifth and sixth affirmative defenses, negligence and recklessness, respectively. At that time the court requested further briefing on the following issue: whether Varsho–Saz's third and fourth affirmative defenses, "offset" and "unclean hands," are barred by the act of state doctrine ("the doctrine"), and should accordingly be stricken.

### FACTS

The plaintiff bank is a government-owned bank organized under the laws of the Republic of Iran. Defendant Varsho–Saz is an Iranian citizen who was forced to leave Iran as a result of the overthrow of

the late Shah of Iran by the Ayatollah Khomeini and the installation of a revolutionary government in Iran. The bank alleges that defendants Varsho–Saz and Hossein Kamrani, among others, fraudulently converted approximately 2.6 million dollars from the bank by causing the bank to wrongfully transfer these funds into accounts controlled by the defendants. Varsho–Saz denies these allegations, and has pleaded a number of affirmative defenses. In his third affirmative defense, offset, Varsho–Saz states that

> [a]s a result of the overthrow of the Shah of Iran by the Ayatollah Khomeini and the installation of a revolutionary government in Iran, defendant was barred from returning to his home and relatives in Iran and defendant's property in Iran consisting of real property and bank stocks with an approximate value of $1.6 million were [sic] wrongfully and fraudulently confiscated by the Iranian government. Plaintiff herein is owned and controlled by the Republic of Iran and any judgment obtained against defendant should be offset by the value of defendant's property wrongfully confiscated, together with punitive damages, which sum should be not less than any amount assessed against defendant in the way of compensatory or punitive damages.

Similarly, Varsho–Saz's fourth affirmative defense argues that, by virtue of the foregoing conduct, plaintiff has unclean hands. The bank contends that these defenses are barred by the act of state doctrine and are thus insufficient as a matter of law.

## DISCUSSION

### A. Standard of Review

A motion to strike provides an early challenge to the legal sufficiency of a defense. *California v. United States*, 512 F.Supp. 36, 38 (N.D.Cal.1981). Federal Rule of Civil Procedure 12(f) provides that the court may order stricken "any insufficient defense." Rule 12(f) motions are proper when a defense is insufficient as a matter of law. *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,*

677 F.2d 1045, 1057 (5th Cir.1982). Finally, the court must view the pleading under attack in the light most favorable to the pleader. *California, supra* 512 F.Supp. at 39.

### B. The Merits

#### 1. *Act of State Doctrine*

The act of state doctrine provides that a United States court will not adjudicate a politically sensitive dispute which would require the court to judge the legality of acts of a foreign state completed within that state's territory. *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1046 (9th Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983). "The purpose of the device is to keep the judiciary from embroiling the courts and the country in the affairs of the foreign nations whose acts are challenged." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1360 (9th Cir.1988) (en banc), *cert. denied*, —— U.S. ——, 109 S.Ct. 1933, 104 L.Ed.2d 404 (1989). A court that passes on the validity of an act of state intrudes into the domain of the political branches. *Id.* Thus, there are "constitutional underpinnings" to the doctrine. *Id.* quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). The burden of establishing the applicability of the doctrine rests on the proponent. *Galu v. Swiss Air: Swiss Air Transport Co., Ltd.*, 873 F.2d 650 (2d Cir. 1989).

#### 2. *Applicability*

It is clear that the bank has met its initial burden by demonstrating that adjudication of defendant's third and fourth affirmative defenses would require this court to "judge the legality of acts of a foreign state completed within that state's territory." *See Northrop Corp.* However, Varsho–Saz contends that the doctrine cannot be applied to the case at bar. His challenge rests on two grounds. First, on the authority of *Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597 (9th Cir. 1976), and *Alfred Dunhill of London, Inc. v. The Republic of Cuba*, 425 U.S. 682, 96

S.Ct. 1854, 48 L.Ed.2d 301 (1976), Varsho–Saz contends that the doctrine cannot be maintained where there has been no statute, decree, order or resolution of the government evidencing the requisite "act of state." However, the *Dunhill* case clearly implies that evidence of an official proclamation is not required where "the facts [are] sufficient to demonstrate that the conduct in question was a public act of those with authority to exercise sovereign powers...." *Dunhill* at 694, 96 S.Ct. at 1861. Varsho–Saz's own pleadings provide the requisite evidence of an official act. As noted above, the third affirmative defense states that "defendant's property in Iran ... were [sic] wrongfully and fraudulently confiscated by the government of Iran." Defendant's First Amended Complaint, ¶ 75. Thus the defendant is arguing that the government stole his property and, at the same time, is claiming that there is insufficient evidence of an "act of state." This theory is inherently self-contradicting, for without the imprimatur of the Iranian government Varsho–Saz could not assert these defenses against the bank. Accordingly, this approach does not advance Varsho–Saz's position that the doctrine is inapplicable.

Varsho–Saz's second and principal argument against the applicability of the act of state doctrine to this case is that the doctrine does not apply because he is alleging "merely an offset" for any damages that may be awarded to the bank. In *First National City Bank v. Banco Nacional de Cuba,* 406 U.S. 759, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972) (hereinafter *"Citibank"*) Justice Douglas argued that, notwithstanding the act of state doctrine, "fair dealing" required that a setoff should be allowed up to the value of the plaintiff's claim. *Citibank,* 406 U.S. 759, 771–772, 92 S.Ct. 1808, 1815, (Douglas, J. concurring). This rationale was not, however, adopted by the court. In *Citibank,* a U.S. bank sought a setoff for expropriation of its

Cuban branches against claims brought against it by the national bank of Cuba. At issue was whether this counterclaim was barred by the act of state doctrine. The court held that on the facts of that case, Citibank's counterclaims were not barred by the doctrine; however, there was no majority opinion. Three members of the 5–4 majority argued that Citibank's claims were justiciable because the Legal Advisor of the Department of State had advised the court that the doctrine need not be applied in this situation. The other six members of the court rejected this so-called *"Berstein* exception" to the doctrine.[1] Justice Powell argued that the act of state doctrine should only apply where the exercise of jurisdiction would "interfere with delicate foreign relations conducted by the political branches." *Citibank,* 406 U.S. 759, 775–776, 92 S.Ct. 1808, 1817. Since he found no such conflict, he concurred in the judgment of the court. *Id.* The four members of the dissent took issue with each of the foregoing views and would have ruled the counterclaim barred by the doctrine. Thus it is clear that none of the other 8 members of the Court embraced the view of Justice Douglas. Indeed, the more reasonable reading of *Citibank* is that the "mere setoff" exception to the act of state doctrine was rejected by the Court.

Contrary to the position of Varsho–Saz, *Empressa Cubana Exportadora, Inc. v. Lamborn & Co.,* 652 F.2d 231 (2d Cir.1981), is instructive on the issue of the applicability of the act of state doctrine to the setoff defense. The court explicitly held that its analysis was "unaffected by the fact that the claim being barred [by the doctrine] is being asserted both as a counterclaim and as a direct claim." *Empressa,* 652 F.2d at 238. The *Empressa* court explicitly confronted the "counterclaim exception" urged by Varsho–Saz. The court stated:

> Justice Douglas did on one occasion take the view that the counterclaim exception to sovereign immunity enunciated in *Re-*

---

1. The *"Berstein* exception" provides that when the executive branch publicly informs the court that it believes that the Act of State Doctrine should not be applied in that particular situation (by way of a *"Berstein* letter"), the court will defer to that position and not apply the doctrine. *Berstein v. N.V. Nederlandsche–Amerikaansche, etc.,* 210 F.2d 375 (2d Cir.1954); *see also* Restatement (Third) of the Foreign Relations Law of the United States 443 n. 8 (1986).

*public of China* [*National City Bank v. Republic of China*, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389 (1956)] should be recognized in the act of state area as well. [citing *Citibank*] When that argument was made, however, it won no complete converts on the court [citation omitted]; since then, its support in the case law has been very limited. [citation omitted] *Empressa*, 652 F.2d at 238 n. 10. Thus it was the court's belief that the Supreme Court had never adopted a counterclaim exception to the act of state doctrine. Additionally, this court finds no merit in Varsho–Saz's attempt to distinguish his offset "defense" from the counterclaim at issue in *Empressa*. Indeed the Second Circuit expressly spoke of a direct claim "as distinguished from a *counterclaim or setoff.*" *Empressa*, 652 F.2d at 237 (emphasis added).

Two months after the *Empressa* decision, another Second Circuit panel handed down a series of decisions pertaining to the expropriation of property owned by American companies by the Cuban government in the aftermath of revolution in the Republic of Cuba.[2] In the *Chase* case, 658 F.2d 875, the court was confronted with the issue of whether Chase's counterclaims were barred by the act of state doctrine. After reviewing the *Citibank* decision and the various opinions therein, the *Chase* court concluded that it was compelled to reach the same result as *Citibank*, that Chase's counterclaims were not barred by the doctrine, since there were no significant differences between the two cases. *Chase*, 658 F.2d at 884. The court read the various opinions in *Citibank* as the basis for the following "phenomenological" rule:

> where (1) the Executive Branch has provided a *Berstein* letter advising the courts that it believes act of state doctrine need not be applied, (2) there is no showing that an adjudication of the claim will interfere with delicate foreign rela-

tions, and (3) the claim against the foreign sovereign is asserted by way of counterclaim and does not exceed the value of the sovereign's claim, adjudication of the counterclaim for expropriation of the defendant's property is not barred by the act of state doctrine.

*Chase*, 658 F.2d at 884 (hereinafter "the *Citibank* rule"). Finally, the court noted that this view was consistent with *Empressa* where there was no evidence that the Executive had expressed any view on the applicability of the doctrine in that case. The three-part *Citibank* rule was echoed in *Chemical*, 658 F.2d 903, 911; however, in that case the court was unable to determine whether the necessary elements were present and accordingly remanded the case for further consideration.

Notwithstanding the foregoing cases, Varsho–Saz contends that the Supreme Court has answered the issue conclusively, and in his favor, in *First National City Bank v. Banco Para El Comercio*, 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) (*"Bancec"*). *Bancec* was an appeal from one of the Second Circuit cases decided along with *Chase* and *Chemical I*. It involved the issue of whether Citibank could offset the value of its seized Cuban assets against a claim by Bancec, notwithstanding the fact that Bancec was juridically separate from the Cuban government which had expropriated Citibank's property. The Court applied "principles of equity common to international law and federal common law," and held that Citibank could apply the setoff. *Bancec*, 462 U.S. at 613, 633, 103 S.Ct. at 2593, 2603. However, the court did not analyze the act of state doctrine. Only one reference to the doctrine was made. In the last footnote of the opinion, the court stated that

> Bancec does not suggest, and we do not believe, that the act of state doctrine [citation to *Sabbatino* omitted] precludes this Court from determining whether Ci-

**2.** *Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875 (2d Cir.1981) (*"Chase"*); *Banco Para el Comercio Exterior de Cuba v. First National City Bank*, 658 F.2d 913 (2d Cir.1981); *First Bank of Boston (International) v. Banco Nacional de Cuba*, 658 F.2d 895 (2d Cir.1981);

*Banco Nacional de Cuba v. Chemical Bank New York Trust Co., Banco Nacional de Cuba v. Irving Trust Co., Banco Nacional de Cuba v. Manufacturers Trust Co.*, 658 F.2d 903 (2d Cir.1981) (*"Chemical I"*).

tibank may set off the value of its seized Cuban assets against Bancec's claim. *Bancec*, 462 U.S. at 634 fn. 28, 103 S.Ct. at 2603 fn. 28. Varsho–Saz argues that this statement controls the present dispute and accordingly the doctrine cannot be used to bar his third and fourth affirmative defenses. The court disagrees.

There are two crucial distinctions between the case at bar and *Bancec*, although neither appear on the face of the *Bancec* opinion. First, *Bancec* clearly falls within the *Citibank* rule articulated in *Chase*. In *Bancec*, the Executive had provided a *Berstein* letter advising the courts that the act of state doctrine need not be applied. *See Citibank*, 406 U.S. at 764, 92 S.Ct. at 1811–12 (Letter from the State Department Legal Advisor stated that "the act of state doctrine should not be applied to bar consideration of a defendant's counterclaim or setoff against the Government of Cuba in this or like cases."). Further, there was no evidence that an adjudication of Citibank's counterclaims would interfere with any delicate foreign relations. Finally, the counterclaim did not exceed the value of Bancec's claim. *See Banco Para El Comercio Exterior de Cuba v. First National City Bank*, 744 F.2d 237 (2d Cir. 1984) (Bancec's claim dismissed on remand on the grounds that Citibank's counterclaim exceeded the value of the direct claim); *Banco Para El Comcercio Exterior de Cuba v. First National City Bank*, 658 F.2d 913, 916 (2d Cir.1981) (Citibank did not seek an affirmative award of damages.).

By contrast, the case at bar is clearly beyond the *Citibank* rule. While the proposed offset does not exceed the value of Bank Tejarat's claim, the other prerequisites are clearly absent. First, there is no evidence that the Executive branch believes the act of state doctrine should not apply in this case. Second, the court believes that an adjudication of the claims of Varsho–Saz might interfere with delicate foreign relations of the United States. Accordingly, this case must be distinguished from *Bancec*.

The court finds that *Bancec* is also to be distinguished from the case at bar on the basis of the nationality of the counterclaimant. In *Bancec*, the party attempting to assert a setoff (Citibank) was an American corporation. Accordingly, the confiscation of its property by the government of Cuba was a violation of international law. *See Bancec*, 462 U.S. at 632, 103 S.Ct. at 2603. Thus, that situation fell squarely within the Second Hickenlooper Amendment,[3] which provides that the act of state doctrine shall not be invoked where the confiscation was carried out in violation of international law. 22 U.S.C. § 2370(e)(2); *Empressa*, 652 F.2d at 237. Indeed, in *Bancec* the Supreme Court felt compelled to reach the result it did because the government of Cuba was "avoiding the obligations of international law." *Bancec*, 462 U.S. at 633–634, 103 S.Ct. at 2603.

There is no such violation of international law in this case. Varsho–Saz alleges that the government of Iran expropriated his property located in Iran. While such an act may offend our notions of justice, *see* U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation"), the taking by a government of the property of one of citizens, located within its territory, does not constitute a violation of international law. *F. Palicio y Compania, S.A. v. Brush*, 256 F.Supp. 481, 487 (S.D.N.Y.1966) (Confiscations by a state of the property of its own nationals do not constitute violations of international law); *Jafari v. Islamic Republic of Iran*, 539 F.Supp. 209, 215 (E.D.Ill.1982) ("the law of nations does not prohibit a government's expropriation of the property of its own nationals."). Since any confiscation by the Iranian government of property owned by Varsho–Saz and located in Iran is not a violation of international law, the Hickenlooper exception to the act of state doctrine is not applicable. 22 U.S.C. § 2370(e)(2); *Perez v. Chase*

---

**3.** 22 U.S.C. § 2370(e)(2). The Amendment was passed in response to the *Sabbatino* decision,

376 U.S. 398. *Empressa*, 652 F.2d at 237.

*Manhattan Bank, N.A.,* 61 N.Y.2d 460, 474 N.Y.S.2d 689, 694, 463 N.E.2d 5, 10, *cert. denied,* 469 U.S. 966, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984) ("The Hickenlooper exception to the act of state doctrine does not apply to confiscations by a foreign state of the property of its own nationals within its border, since such confiscations are 'not contrary to international law.' [citation omitted]").

Based on the foregoing, the court believes that *Bancec* does not prohibit the invocation of the act of state doctrine in this case. This conclusion is supported by the most recent decision in *Banco Nacional de Cuba v. Chemical Bank New York Trust Company,* 822 F.2d 230 (2d Cir.1987) (*Chemical II*), the descendant of *Chemical I*. After *Chemical I*, which predated *Bancec,* the case was remanded for consideration of whether the prerequisites to the *Citibank* rule had been met. On remand, the district court questioned the continuing vitality of the *Citibank* rule. *Banco Nacional de Cuba v. Chemical Bank New York Trust Company,* 594 F.Supp. 1553, 1556–1557 (S.D.N.Y.1984). It felt compelled to reach the same result as *Bancec* where the facts in the *Chemical* case were "strikingly congruent" with the facts in *Bancec. Id.* at 1556. The district court's decision was appealed and the Second Circuit affirmed. *Chemical II,* 822 F.2d 230. In affirming the district court's decision, the Second Circuit applied the *Citibank* rule. The Court found that a recent letter from the State Department Legal Advisor fulfilled the *Berstein* letter requirement, and it found that *Chemical I* had established the existence of the other elements of the rule. *Chemical II* at 235–236. Thus the Second Circuit read the *Bancec* decision as leaving intact the *Citibank* rule as articulated in *Chase, supra.* Finally, the court notes that the decision in *Chemical II* is fully consistent with the dictates of the second Hickenlooper Amendment. *See Chemical II* at 236–237.

Having considered the foregoing cases in light of the facts of the present case, the court holds that Bank Tejarat can assert the act of state doctrine to bar Varsho–Saz's setoff defense. The court concludes that there is no per se setoff or counterclaim exception to the act of state doctrine. Further, the court finds that the second Hickenlooper Amendment is inapplicable to the facts of this case. *See, e.g., F. Palicio; Jafari.* Finally, in the absence of a violation of international law, the court discerns no "principles of equity," *See Bancec,* 462 U.S. 611, 103 S.Ct. 2591, that would compel a contrary result. Bank Tejarat has met its burden of establishing the applicability of the doctrine and the court believes that an adjudication of Varsho–Saz's offset defense would necessarily require the court to intrude into the domain of the political branches. *See Marcos,* 862 F.2d at 1360.

### 3. Unclean Hands

■ Varsho–Saz's fourth affirmative defense argues that the bank has

unclean hands by virtue of the acts of the Republic of Iran which controls plaintiff in confiscating defendant's property and barring defendant from returning to his home in the Republic of Iran.

The court believes that the foregoing discussion of the act of state doctrine controls this claim as well. Adjudication of the "unclean hands" defense would require the court to judge the legality of acts of a foreign state completed within that state's territory. *See Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d at 1046.

In addition the court finds the "unclean hands" defense insufficient in that the inequitable conduct sought to be attributed to the bank is not related to the transaction which is the source of the bank's claims against Varsho–Saz. It is undisputed that under the unclean hands doctrine, "the bad conduct must pertain to the subject matter involved and affect the equitable relations between the litigants." *Washington Capitols Basketball Club, Inc. v. Barry,* 419 F.2d 472, 478 (9th Cir.1969). Misconduct in the abstract, unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands. *Republic Molding Corp. v. B.W. Photo Utilities,* 319 F.2d 347, 349 (9th Cir.1963). Since this court finds, as a matter of law, that the conduct complained of in the fourth affirmative de-

fense has no connection to the claims of the Bank, the court holds that the doctrine of unclean hands does not apply.

### Conclusion

Having reviewed the pleadings, including the parties' original and supplemental briefs, oral arguments, and relevant case law, the court finds defendant Varsho–Saz's third and fourth affirmative defenses insufficient as a matter of law. Accordingly, the court hereby ORDERS that the third and fourth affirmative defenses be STRICKEN from the First Amended Answer.

IT IS SO ORDERED.[4]

---

**4.** This Memorandum Opinion And Order amends the court's previous Memorandum Opinion And Order filed on October 12, 1989.

This order contains no substantive changes, but merely makes stylistic modifications.