**Elvira de la Vega GLEN and Robert M. Glen, Plaintiffs,**

v.

**CLUB MÉDITERRANÉE S.A., a French Corporation, Defendant.**

No. 04–21664–CIV.

United States District Court, S.D. Florida.

April 7, 2005.

Michael Olin, Esq., Stephen F. Rosenthal, Esq., Podhurst Orseck, P.A., City National Bank Building, Miami, Andrew H. Marks, Esq., Stuart H. Newberger, Esq., Alyssa Gsell, Esq., Beth Nolan, Esq., James W. Reed, Esq., Crowell & Moring LLP, Washington, DC, Attorney for Plaintiff.

Benjamine Reid, Esq., Carlton Fields, P.A., Miami, Elliot E. Polebaum, Esq., Fried Frank Harris Shriver & Jacobson LLP, Washington, DC, Attorney for Defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon the Renewal of Motion to Dismiss the Complaint by Defendant Club Méditerranée, S.A. ("CMSA") (DE # 91).

UPON CONSIDERATION of the motion, responses, and being otherwise fully advised in the premises, this Court enters

the following Order, GRANTING the Motion by Defendant CMSA to Dismiss the Complaint.

## BACKGROUND

This action arises out of an alleged unlawful and unjust trespass on and use by Defendant CMSA, of beachfront property in Varadero, Cuba, (the "Varadero" property) which is allegedly owned by Plaintiffs, Elvira de la Vega Glen and Robert M. Glen (successor in interest to Ana de la Vega Glen) (collectively the "Glens"). Plaintiffs assert three separate causes of action against CMSA: (1) unjust enrichment; (2) trespass; and (3) violations of the Trading with the Enemy Act, 50 U.S.C.App. § 1 *et seq.* ("TWEA"). Specifically, the Complaint alleges that CMSA disregarded Plaintiffs' longstanding ownership of the Varadero property, by building and operating a 337–room luxury resort hotel on the property beginning in 1997. Compl. at 1. Plaintiffs claim that CMSA generated millions of dollars of revenues and profits from this "commercial exploitation" of the Varadero property, and that CMSA has "failed and refused to share any of these proceeds or to make any payment whatsoever" to the Glens. *Id.* Plaintiffs seek compensation for CMSA's alleged wrongful exploitation of the Varadero property and CMSA's alleged unjust enrichment at Plaintiffs' expense. *Id.* at 1–2. In addition, Plaintiffs allege that CMSA's dealings with the Government of Cuba in connection with the development and operation of the luxury resort hotel on the Varadero property violated TWEA, and seek a declaration that CMSA violated this federal statute. *Id.* at 2.

In its August 16, 2004 Motion to Dismiss (DE # 29) CMSA sought dismissal of Plaintiffs' Complaint for insufficiency of process, lack of proper venue, lack of subject matter jurisdiction, and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(5) and 12(b)(6). Specifically, CMSA argued that: (1) Plaintiffs failed to serve CMSA (2) the act of state doctrine precludes this Court from considering the unjust enrichment and trespass claims; (3) the political question doctrine (or in the alternative, preemption) precludes the Court from considering the unjust enrichment and trespass claims; (4) the local action doctrine precludes this Court's exercise of jurisdiction with respect to the unjust enrichment and trespass claims, or in the alternative, the local action doctrine renders venue improper in this district; (5) the Court lacks jurisdiction to consider Plaintiffs' claim under the TWEA because the statute confers on Plaintiffs no judicially remediable rights; (6) Plaintiffs lack standing to bring a claim under TWEA; and (7) the Complaint fails to state a claim upon which relief can be granted under any applicable law.

On February 16, 2005 this Court granted the CMSA's Motion to Dismiss to the extent that the Motion challenged the service of process as insufficient. The Court granted Plaintiffs an additional thirty (30) days to effect proper service upon CMSA in accordance with the Hague Service Convention. The Court reserved ruling on all other portions of CMSA's Motion to Dismiss and stated that upon being properly served, CMSA may move this Court to renew the Motion. On March 1, 2005, pursuant to Plaintiffs' perfection of service, CMSA renewed its Motion to Dismiss the Complaint. The Court will thus address the remaining grounds of CMSA's Motion to Dismiss.

## *DISCUSSION*

## I. *THE ACT OF STATE DOCTRINE MANDATES DISMISSAL OF PLAINTIFFS' UNJUST ENRICHMENT AND TRESPASS CLAIMS*

As a threshold matter Defendant CMSA argues that the act of state doctrine com-

pels dismissal of this case. Defendant argues that Plaintiffs' claims for unjust enrichment and trespass necessarily hinge on Plaintiffs' alleged ownership of the Varadero property in 1997 and thereafter. Defendant argues that in asserting claims that are predicated on their property interests in an expropriated Cuban property, Plaintiffs are effectively asking this Court to nullify the Cuban government's 1959 expropriation of the Varadero property. Defendant CMSA argues that such evaluation, and thus Plaintiffs claims, are precluded by the act of state doctrine.

## A. The Act of State Doctrine

■ The act of state doctrine is not a jurisdictional doctrine. Rather, it is a doctrine of judicial restraint that prohibits a United States court from passing judgment on the validity of an act of a foreign sovereign taken within its own territory. *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, 493 U.S. 400, 405, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) ("The act of state doctrine ... precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory"); *Fogade v. ENB Revocable Trust*, 263 F.3d 1274 (11th Cir.2001). The court in *Banco Nacional de Cuba v. Sabbatino* reasoned that:

> Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

376 U.S. at 416–417, 84 S.Ct. 923 (quoting *Underhill v. Hernandez*, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897)). The

doctrine is based on the "domestic separation of powers, reflecting the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder the conduct of foreign affairs." *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l*, 493 U.S. 400, 404, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990) (citations omitted). Underlying the act of state doctrine are the principles of "[i]nternational comity, respect for the sovereignty of foreign nations on their own territory, and the avoidance of embarrassment to the Executive Branch in its conduct of foreign affairs." *Id.* at 408, 110 S.Ct. 701. The doctrine "prohibits the United States courts from reaching the merits of an issue in order to avoid embarrassment of foreign governments in politically sensitive matters and interference with our own foreign policy." *Consolidated Development Corp.*, No. 96–1820–Civ–Graham, at 3 (S.D.Fla. July 30, 1997) (citing *In re Grand Jury Proceedings Bank of Nova Scotia*, 740 F.2d 817, 831 (11th Cir.1984)).

The Court in *W.S. Kirkpatrick*, noted that the act of state doctrine is not some vague doctrine of abstention but a "principle of decision binding on federal and state courts alike," whereby "the act within its own boundaries of one sovereign State ... becomes ... a rule of decision for the courts of this country." 493 U.S. at 406, 110 S.Ct. 701; *see, e.g., Sabbatino*, 376 U.S. at 439, 84 S.Ct. 923 (act of state doctrine "proscribe[d] a challenge to the Cuban expropriation decree"); *Fogade*, 263 F.3d at 1296 (act of state doctrine precluded challenge to confiscation by Venezuelan government); *First Merchants Collection Corp. v. Republic of Argentina*, 190 F.Supp.2d 1336, 1339–1340 (S.D.Fla. 2002) (act of state doctrine barred inquiry into allegedly illegal confiscation by government of Argentina); *see also F. Palicio y Compania, S.A. v. Brush*, 256 F.Supp.

481, 487 (S.D.N.Y.1966), *aff'd* 375 F.2d 1011 (2d Cir.1967).

■ There is, however, a limited legislative exception to the act of state doctrine. This exception, the Second Hickenlooper Amendment (the "Amendment"), provides in relevant part:

Notwithstanding any other provision of law, no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits ... in a case which a claim of title or other right to property is asserted ... based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of [ ] state in violation of principles of international law ....

22 U.S.C. § 2370(e)(2). This Court, however, is not persuaded that the Second Hickenlooper Amendment applies to the instant action.

First, the confiscated property is real property located outside of the United States. *See Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.*, 686 F.2d 322, 327 (5th Cir.1982) ("Congress intended [the Amendment] to be limited to cases involving claims of title with respect to American owned property nationalized by a foreign government in violation of international law, when the property or assets were subsequently located in the United States."); *Perez v. Chase Manhattan Bank*, 61 N.Y.2d 460, 474 N.Y.S.2d 689, 463 N.E.2d 5, 10 (1984) ("The Hickenlooper amendment does not apply ... to expropriated property that remains in the confiscating country without coming within the territorial jurisdiction of the United States."); Restatement (Third) of the Foreign Relations Law of the United States § 444 cmt. E (1986) ("In order for the Hickenlooper Amendment to apply, the plaintiff must allege and prove that the property that is the subject of the claim is in the United States or was there at the time the action was commenced"). The Varadero property is alleged to be real property located outside the territorial jurisdiction of the United States.

■ Second, a foreign nation's confiscation of its own nationals' property does not implicate principles of international law. *Fogade* at 1294–1295 (*citing Bank Tejarat v. Varsho–Saz*, 723 F.Supp. 516, 520 (C.D.Cal.1989)) (declining to apply the Second Hickenlooper Amendment because "the taking by a government of the property of one of its citizens, located within its territory, does not constitute a violation of international law"); *F. Palicio y Compania, S.A. v. Brush*, 256 F.Supp. 481, 487 (S.D.N.Y.1966) (declining to apply the Second Hickenlooper Amendment because "confiscations by a state of the property of its own nationals, no matter how flagrant and regardless of whether compensation has been provided, do not constitute violations of international law"); *cf. de Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1396 (5th Cir.1985) (noting that section 1605(a)(3) of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605, parallels the Second Hickenlooper Amendment, and observing that "injuries to individuals have been cognizable [under international law] only where they implicate two or more different nations ... as long as a nation injures only its own nationals, however, then no other state's interest is involved; the injury is a purely domestic affair ....").

Both Elvira de la Vega Glen and Ana de la Vega Glen (Robert Glen's predecessor in interest) were Cuban nationals at the time of the expropriation. *See* Ex. C to Def. Motion to Dismiss. Thus, any expropriation of property in 1959, well before either Plaintiff became a U.S. citizen, is not a violation of international law. The Second Hickenlooper Amendment is inapplicable to the instant case. Thus, the act of state doctrine applies.

In an attempt to defeat the application of the act of state doctrine, Plaintiffs advance several arguments. For the reasons set forth below this Court finds each of those arguments unpersuasive.

■ First, Plaintiffs argue that this Court need not decide the validity of the expropriation under U.S. law because Congress and the Executive have stated that under U.S. law, American citizens such as the Glens retain an interest in their confiscated property. Pl. Opp. Mem. at 1, 5, 18. In support of this argument Plaintiffs first point to the Foreign Assistance Act of 1961, 22 U.S.C. § 2370(a), wherein Congress stated that no assistance was to be provided to the Cuban government until it had either (a) returned the confiscated property, or (b) provided equitable compensation to those from whom the property was expropriated. *Id.* at 5. Plaintiffs then argue that the Cuban Assets Control Regulations (CACR), 31 C.F.R. § 515, similarly confirmed that Cuban property owners maintain an ongoing right to receive either "adequate and effective compensation" or otherwise have their property claims settled pursuant to a claims settlement procedure. 31 C.F.R. § 515.336(a). *Id.* at 6. Plaintiffs finally point to Titles III and IV of the Cuban Liberty and Democratic Solidarity Act, (the "Helms–Burton Act") and argue that through the Helms–Burton Act Congress reaffirmed the rights of American citizens to seek redress in the U.S. Courts against private companies trafficking in their property. *Id.* at 6–7.

■ Plaintiffs' arguments do not withstand scrutiny. Plaintiffs' contention that "Congress has been explicit that Americans' rights in their Cuban property survived expropriation,"[1] grossly overstates the position of the United States. Assuming arguendo that Plaintiffs are considered U.S. citizens for purposes of this evaluation, Plaintiffs erroneously suggest that U.S. law considers the Cuban expropriation decree somehow to be ineffective and leaves ownership interest in Plaintiffs' hands. There is no case law to support such an inference. To the contrary, the Supreme Court in *Sabbatino* recognized the power of the Cuban government to expropriate property within its borders and to vest the property right in Cuba. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 414–415, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (Cuba's confiscation vested in Cuba the "property right in" and "dominion over" sugar expropriated by Cuba, even though Cuba failed to compensate the former owners). The court noted that to rule otherwise "would ... render uncertain titles in foreign commerce, with the possible consequence of altering the flow of international trade." *Id.* at 433, 84 S.Ct. 923; *see also Ricaud v. Am. Metal Co.*, 246 U.S. 304, 309–10, 38 S.Ct. 312, 62 L.Ed. 733 (1918) (seizure of bullion by Mexican government divested titled and ownership of the bullion by a U.S. citizen). Additionally, the Foreign Assistance Act, to which Plaintiffs refer, says nothing regarding surviving ownership interests in property taken by the Cuban government. Plaintiffs' reference to 31 C.F.R. § 515.336 is unpersuasive as well. The regulation, while defining "confiscation," does not speak to the ownership interests in expropriated property. Finally, Titles III and IV of the Helms–Burton Act, do not provide that those whose property was taken by the Cuban government retain *legal title* to that property. Rather, Title III permits any U.S. national "who owns a claim to such [confiscated] property for money damages" to sue those who traffic in such property. 22 U.S.C. §§ 6082(a)(1)(A).[2] Title IV provides sanc-

---

1. Pl. Opp. Mem. at 4.

2. On January 14, 2005 President George Bush, like his predecessors, suspended ac-

tions against those who traffic in "confiscated property, a claim to which is owned by a United States national." 22 U.S.C. §§ 6082(a)(2). Titles III and IV simply imply that people like the Glens may own a *claim* for compensation under U.S. law, but they do not *own* the expropriated land itself. Plaintiffs causes of action of unjust enrichment and trespass are predicated on their continued *ownership* of the Varadero property.

 Second, Plaintiffs attempt to argue that the only acts of state at issue are the actions of the Cuban government with respect to Club Med. Plaintiffs argue that because Plaintiffs have a continuing property interest under United States law, the actions of the Cuban government with respect to Club Med are merely incidental to the damage caused, and unjust enrichment enjoyed by Club Med. In support of this argument Plaintiffs cite to *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l.,* 493 U.S. 400, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990) for the proposition that: "[a]ct of state issues arise when a court must decide—that is, when the outcome of the case turns upon—the effect of official action by a foreign government." *Id.* at 406, 110 S.Ct. 701. Plaintiffs logic is flawed in several respects. First, Plaintiffs assume that they enjoy a continuing property interest in the Varadero property. As discussed above, this is not a legally cognizable presumption. Second, the Cuban government's actions with respect to Club Med are not the crux of this issue. The critical act of state, underlying all of Plaintiffs' claims, is the Cuban government's 1959 expropriation of the Varadero property. Third, this Court finds that the outcome of Plaintiffs' claims for unjust enrichment and trespass *turns upon the effect of the official action by the*

*Cuban government,* thus the acts of the Cuban government are not merely incidental to Plaintiffs' claims for unjust enrichment and trespass. The gravamen of Plaintiffs' Complaint is that the Cuban government expropriated the Varadero property and that Plaintiffs' have a right to sue CMSA from benefitting from the expropriation. Thus, the Cuban government's act of state, whether with respect to CMSA or the Varadero property, is directly at issue.

Though dicta, it is instructive to look to Justice Scalia's discussion of the act of state doctrine's application in *W.S. Kirkpatrick.* Justice Scalia noted that the petitioners in *W.S. Kirkpatrick* cited to Justice Holmes' opinion in *American Banana Co. v. United Fruit Co.,* 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909) wherein Justice Holmes, noted that "a seizure by a state is not a thing that can be complained of elsewhere in the courts." *American Banana,* 213 U.S. at 357–358, 29 S.Ct. 511. Justice Scalia, interpreting this statement, explained that this statement does in fact stand for the proposition that "a seizure by a state cannot be complained of elsewhere—in the sense of being sought to be declared ineffective elsewhere." *W.S. Kirkpatrick,* 493 U.S. at 407, 110 S.Ct. 701. In this instance, Plaintiffs are essentially seeking to do that which *W.S. Kirkpatrick* and *American Banana* say they cannot, *i.e.,* to complain in this Court about a seizure by the Cuban government.

 Third, Plaintiffs argue that the act of state doctrine is inapplicable here because the act of state doctrine does not preclude inquiry into commercial activity. Pl. Opp. Mem. at 18. This argument is unpersuasive. Whether the activity at issue is the interaction of the Cuban govern-

---

tions under Title III, the Helms–Burton Act. President Bush suspended Title III actions as "necessary to the national interests of the

United States." http://www.whitehouse.gov/news/releases/2005/1/20050114–4.html.

ment with Club Med or its expropriation of the Varadero property, this Circuit has specifically rejected the commercial activity exception to the act of state doctrine. *See Honduras Aircraft Registry, Ltd. v. Government of Honduras,* 129 F.3d 543, 550 (11th Cir.1997) ("there is no commercial exception to the act of state doctrine"). Moreover, the law in this Circuit is explicit—expropriation is not "purely commercial" activity beyond the reach of the act of state doctrine. *See Beg v. Islamic Republic of Pakistan,* 353 F.3d 1323, 1326 (11th Cir.2003) (the power of eminent domain is a sovereign power and thus "not commercial"); *Consolidated Development Corp.,* No. 96–1820–Civ–Graham, at 13 (S.D.Fla. July 30, 1997) ("The act at issue in this case is the Cuban government's enactments of a statute that expropriated Plaintiffs' oil concessions .... [E]xpropriation is not a commercial activity ....."); *World Wide Minerals, Ltd. v. Republic of Kazakhstan,* 296 F.3d 1154, 1166 (D.C.Cir.2002) ("[E]xpropriation of property is the classic act of state addressed in the case law.") *cert. denied,* 537 U.S. 1187, 123 S.Ct. 1250, 154 L.Ed.2d 1019 (2003).

■ Unlike foreign sovereign immunity, the act of state doctrine affects the viability of the Glen's claims against CMSA. "The doctrine does not simply relieve the foreign government of liability for its acts, but operates as an issue preclusive device, foreclosing judicial inquiry into the validity or propriety of such acts in litigation between any set of parties." *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1380 (5th Cir.1980); *see also National American Corp. v. Federal Republic of Nigeria,* 448 F.Supp. 622, 640 (S.D.N.Y.1978); *Hunt v. Mobil Oil Corp.,* 550 F.2d 68 (2d Cir.1977) (foreclosing antitrust conspiracy suit against private oil companies that would have required inquiry into alleged untoward motives behind

Libya's nationalization of its oil industry). Consequently, the Glen's unjust enrichment and trespass claims would be foreclosed under this doctrine, since they would require this court to make a determination of their rights in the wake of the sovereign acts of the Cuban government.

Because the Glen's trespass and unjust enrichment claims necessarily hinge on the asserted invalidity of an act of state, the act of state doctrine precludes this court from addressing these claims. Count I and II, Plaintiffs' claims for unjust enrichment and trespass against CMSA are therefore Dismissed with Prejudice. As Plaintiffs' claims are barred by the act of state doctrine, this Court need not address any the other grounds for dismissal.

## II. PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY RELIEF UNDER THE TRADING WITH THE ENEMY ACT ("TWEA")

■ Plaintiff alleges that CMSA violated the Trading with the Enemy Act, 50 U.S.C.App. § 1 *et seq.,* and certain regulations promulgated thereunder by "systematically and repeatedly evading and avoiding the prohibitions of the United States trade embargo on Cuba." Compl. at ¶ 19, 25–34. Plaintiffs ask this Court to enter a declaratory judgment against CMSA stating that CMSA violated TWEA. It is plain that this court lacks jurisdiction to do so.

In furtherance of its objective, "to define, regulate, and punish trading with the enemy" [3] TWEA provides the President with the power to "regulate ... transactions involving ... any property in which any foreign country or a national thereof has any interest, by any person, or with respect to any property, subject to the jurisdiction of the United States ...." 50

---

**3.** S. Rep. 65–111 at 1 (1917)

U.S.C. Appx. § 5(b). Pursuant to this authority, the Treasury Department, through the Office of Foreign Assets Control (OFAC), promulgated the Cuban Assets Control Regulations (CACR). *See* 31 C.F.R. § 515. Neither TWEA nor CACR provides Plaintiffs with a private right of action for declaratory relief.

Plaintiffs argue that the Declaratory Judgment Act, permits the court, where an actual controversy exists, to "declare the rights and other legal remedies of any interested party seeking such declaration, whether or not further relief is or could be sought." 22 U.S.C. § 2201; Pl. Opp. Memo at 28–29.

Plaintiffs' attempt to use the Declaratory Judgment Act as a vehicle for their TWEA claim fails. As the Supreme Court in *Schilling v. Rogers,* 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960) noted, judicial review is unavailable where no express provision for judicial relief exists. *Id.* at 676, 80 S.Ct. 1288. The Court in *Schilling* stated that: "the Declaratory Judgment Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remedial right. No such right exists here." *Id.* at 677, 80 S.Ct. 1288 (citations omitted).

The *Schilling* court further noted that in enacting TWEA "Congress was advertent to the role of courts, and an absence in any specific area of any kind of provision for judicial participation strongly indicates a legislative purpose that there be no such participation." *Schilling v. Rogers,* 363 U.S. 666, 674, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960). The Court held that because declaratory relief "presupposes the existence of a judicially remedial right," and because Plaintiffs have no remedial rights under TWEA, the Court lacked jurisdiction to consider the claim. *Id.* at 677, 80 S.Ct. 1288. The same is true in this instance. For this Court to create a private

right of action for declaratory relief under TWEA would be contrary to legislative intent. This Court thus lacks jurisdiction to hear this claim.

 Defendant CMSA further argues that Plaintiffs lack standing to bring a claim under TWEA. When lack of standing is asserted in a motion to dismiss, the issue is properly resolved by reference to the allegations of the complaint. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To establish standing Plaintiffs must show *inter alia* that it is "likely, as opposed to merely speculative, that [Plaintiffs'] injury will be redressed by a favorable decision." *Id.* (citations omitted). In this instance, Plaintiffs lack standing to bring a claim under TWEA. Plaintiffs' by their own admission do not seek damages under TWEA. Pl. Opp. Mem. at 29. Yet, any declaration by this Court that CMSA violated TWEA would not redress Plaintiffs' alleged injuries. Since CMSA no longer operates a resort on the Varadero property the only possible relief would be compensatory and neither TWEA nor CACR provides for compensatory relief. *See, e.g., Talenti v. Clinton,* 102 F.3d 573, 578 (D.C.Cir.1996) (explaining that the injury to a plaintiff whose property was expropriated was a lack of compensation and that publication of the alleged wrongful expropriation would not redress the injury).

 "Absent a redressable injury a judicial determination of plaintiff's claim would amount to an advisory opinion prohibited by Article III's case and controversy requirement." *Church v. City of Huntsville,* 30 F.3d 1332, 1335 (11th Cir. 1994) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471–472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). While the Declaratory Judgment Act confers upon a court the power to "declare the

rights and other legal remedies of any interested party seeking such declaration, whether or not further relief is or could be sought," 22 U.S.C. § 2201, it does not authorize this Court to issue an advisory opinion regarding a defendant's alleged violation of a federal statute.

Even assuming that this court had jurisdiction to hear this claim and Plaintiffs had standing to assert this claim, the claim must still be dismissed for failure to state a claim upon which relief can be granted. Pursuant to Fed.R.Civ.P. 12(b)(6), a motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). On such a motion to dismiss, the Court notes that it must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir. 1988). Consideration of matters beyond the complaint is improper in the context of a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Milburn,* 734 F.2d at 765. The Court must, "[a]t this stage of the litigation, ... accept [the plaintiff's] allegations as true." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Further, the Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *S. Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action.

By its terms, TWEA regulates the conduct of those persons "subject to the jurisdiction of the United States." 50 U.S.C.

Appx. § 5(b). Plaintiffs allege that CMSA is a person subject to the jurisdiction of the United States. Pl Compl. at ¶ 28. This Court, however, is not bound to accept this legal conclusion. *See, e.g., Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (stating that courts are "not bound to accept as true a legal conclusion couched as a factual allegation").

■ Plaintiffs argue that CMSA is "subject to the jurisdiction of the United States" because it "is a company doing substantial business in the United States, including business directly involving the property at issue in this case." Pl. Opp. Memo at 30. Plaintiffs' characterization, however, is inapplicable to the instant case. CACR, under which Plaintiffs allege CMSA's alleged violation of TWEA, itself defines a "person subject to the jurisdiction of the United States" as: (a) any citizen or resident of the Unites States, wherever located; (b) any person within the United States; (c) any corporation or other entity organized under the laws of the United States; or (d) any corporation or other entity "that is owned or controlled" by citizens or residents of the United States or by corporations or other entities organized under United States law. 31 C.F.R. § 515.329; Restatement (Third) of Foreign Relation Law of the United States § 414 (1981). The Complaint alleges that CMSA is a French corporation having its principal place of business in France. Compl. at ¶ 3–4. Plaintiffs do not and by their own facts cannot allege that CMSA is incorporated under the laws of the United States or that it is owned or controlled by United States entities, or that it is physically present in the United States. On the face of the Complaint CMSA is not a person "subject to the jurisdiction of the United

States" and therefore is not subject to TWEA. nor culpable for violations thereof.

Accordingly, Count III, Plaintiffs' claim for violations of TWEA, is Dismissed with Prejudice.

## CONCLUSION

Accordingly, based on the foregoing discussion, it is

ORDERED AND ADJUDGED that Defendant CMSA's Motion to Dismiss Plaintiffs' Complaint is GRANTED. It is further

ORDERED AND ADJUDGED that Plaintiffs' Motion for Oral Argument (DE # 95) is DENIED as MOOT.