[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12648

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-21664 CV-KMM

ELVIRA DE LA VEGA GLEN,
ROBERT M. GLEN,

Plaintiffs-Appellants,

versus

CLUB MÉDITERRANÉE, S.A.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 31, 2006)**

Before BLACK, BARKETT and COX, Circuit Judges.

COX, Circuit Judge:

Elvira de la Vega Glen and her son Robert M. Glen (together, "the Glens") sued

Club Méditerranée, S.A. and Club Méditerranée Group ("Club Med") for trespass,

unjust enrichment, and violation of the federal Trading with the Enemy Act (TWEA).

Their lawsuit seeks to recover compensation for allegedly wrongful benefits that Club Med derived through operation of a resort on property that the Glens claim to own in Cuba. The district court dismissed all three causes of action, holding that the act of state doctrine barred recovery on the Glens' unjust enrichment and trespass claims and that no private right of action exists under the TWEA. The Glens appeal the dismissal of the trespass and unjust enrichment claims only. We affirm.

## I. FACTS & PROCEDURAL HISTORY

Prior to the Communist revolution in Cuba, Elvira de la Vega Glen and her sister, Ana Maria de la Vega Glen, were Cuban citizens and residents who jointly owned beachfront property on the Peninsula de Hicacos in Varadero, Cuba. On or about January 1, 1959, in conjunction with the revolution, the Cuban government expropriated the property. The Glens allege that the expropriation was illegal. Also in 1959, the sisters fled Cuba.

In 1997, in joint venture with the Cuban government, Club Med constructed and subsequently operated a five-star luxury hotel on the property that the Glens had owned. In 1999, Ana Maria de la Vega Glen died and passed any interest she still had in the Varadero beach property to her nephew Robert M. Glen. The Glens (now both U.S. citizens) allege that Club Med reaped a profit of many millions of dollars from

2

its wrongful occupation and use of their property from 1997 into 2003. In 2003, Club Med turned over its interest in the resort to an unidentified third party.

In the district court, the Glens asserted three claims against Club Med. Two of these, unjust enrichment and trespass, are based on Florida law. The third claim was that Club Med violated the TWEA, 50 U.S.C. App. § 1 et seq., by engaging in business transactions prohibited by that federal statute. The district court dismissed the complaint in its entirety for failure to state a claim, holding that the Glens are barred by the act of state doctrine from recovering on the state law claims and that the TWEA does not provide a private right of action. *Glen v. Club Méditerranée S.A.*, 365 F. Supp. 2d 1263 (S.D. Fla. 2005).

## II. ISSUES ON APPEAL & CONTENTIONS OF THE PARTIES

The Glens appeal the dismissal of their unjust enrichment and trespass claims only. They primarily argue that the 1996 Congressional enactment of the Cuban Liberty and Democratic Solidarity Act (the "Helms-Burton Act"), 22 U.S.C. § 6021 et seq., prevents the courts from dismissing lawsuits like theirs pursuant to the act of state doctrine, a judicially-created rule of decision explained by the Supreme Court in *W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l.* 493 U.S. 4020, 110 S. Ct. 701 (1990). The Glens maintain that the Helms-Burton Act clarifies U.S. foreign policy towards Cuba and makes application of the act of state doctrine

3

to their lawsuit inappropriate.  Club Med contends that, even after the Helms-Burton Act, the act of state doctrine bars the Glens' recovery.

### III.  STANDARD OF REVIEW

"This [c]ourt reviews *de novo* a dismissal for failure to state a claim upon which relief may be granted."  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (citing *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1307 n.11 (11th Cir. 2002)).

### IV.  DISCUSSION

The act of state doctrine is a judicially-created rule of decision that "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory."  *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 S. Ct. 923, 926 (1964).  The doctrine prevents any court in the United States from declaring that an official act of a foreign sovereign performed within its own territory is invalid.  *Kirkpatrick*, 493 U.S. at 405-06, 110 S. Ct. at 704-05.  It "requires that 'the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid.'" *FOGADE v. ENB Revocable Trust*, 263 F.3d 1274, 1293 (11th Cir. 2001) (quoting *Kirkpatrick*, 493 U.S. at 409, 110 S. Ct. at 707).

4

The act of state doctrine is a product of judicial concern for separation of powers, a result of the judiciary's recognition that it is the province of the executive and legislative branches to establish and pursue foreign policy and that judicial determinations regarding the validity of the acts of foreign sovereigns might negatively affect those policies. *See Kirkpatrick*, 493 U.S. at 404, 110 S. Ct. at 704; *Sabbatino*, 376 U.S. at 431-33, 84 S. Ct. at 942-43. In *Sabbatino*, the Supreme Court applied the act of state doctrine to foreclose judicial consideration of the validity of the Cuban government's expropriation of a shipment of sugar. 376 U.S. at 428, 84 S. Ct. at 940. The Court held that "the Judicial Branch will not examine the validity of a taking of property within its own territory by a foreign sovereign government." *Id.* As a result, a counterclaim based on asserted invalidity of the expropriation failed. 376 U.S. at 439, 84 S. Ct. at 946.

To distinguish *Sabbatino*, the Glens primarily argue that, since the 1996 enactment of the Helms-Burton Act, the act of state doctrine does not prevent lawsuits like theirs from proceeding because, unlike *Sabbatino*, these cases do not require the courts to decide the effect of official action by the Cuban government. In so arguing, the Glens rely on *Kirkpatrick*, which states, "Act of state issues only arise when a court *must decide* – that is, when the outcome of the case turns upon – the effect of

official action by a foreign sovereign.  When that question is not in the case, neither is the act of state doctrine."  493 U.S. at 406, 110 S. Ct. at 705.

The effect of the Cuban government's expropriation is, however, just as relevant to the Glens' claims as it was to the counterclaim in *Sabbatino*.  As the district court recognized, the Glens' state law causes of action for trespass and unjust enrichment "are predicated on their continued *ownership* of the Varadero property. . . . The gravamen of Plaintiffs' Complaint is that the Cuban government expropriated the Varadero property and that Plaintiffs' have a right to sue [Club Med] from [sic] benefitting from the expropriation."  *Glen*, 365 F. Supp. 2d at 1270.  The validity of the Cuban government's act of expropriation is directly at issue in this litigation.  The Glens maintain that the expropriation was invalid; but, if it was valid, then they have been divested of their ownership of the property and cannot maintain a claim for trespass or for any benefit that Club Med may have gained from its use of the

property.[1]    Resolution of the expropriation's effect would be necessary to a determination of whether the Glens own the Varadero property.[2]

Recognizing that they must own the Varadero property in order to succeed on their state law claims and attempting to avoid application of the act of state doctrine, the Glens rely on the Helms-Burton Act, which they argue establishes both that they continue to have an "ownership interest" in the property and that the act of state doctrine cannot be applied to bar their recovery.   We note here that the Glens have not asserted a claim against Club Med based on the statutory cause of action created by Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081-6085.  All parties agree that they are unable to do so because, as a consequence of presidential action authorized by the statute, the private right of action created therein has been suspended and is not

_____

[1]Under Florida law, "[t]respass to real property is an injury to or use of the land of another by one having no right or authority." *Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. Dist. Ct. App. 1980).  And, the success of the Glens' unjust enrichment claim depends on the success of their trespass claim.  *See Marshall-Shaw v. Ford*, 755 So. 2d 162, 165 (Fla. Dist. Ct. App. 2000) ("[W]here *the commission of a tort results in the unjust enrichment* of the defendant at the plaintiff's expense the plaintiff may disregard, or 'waive' the tort action, and sue instead on a theoretical and fictitious contract . . . .") (citations omitted) (emphasis added).  The Glens acknowledge this. Appellants' Reply Brief at 20-22.

[2]The Glens also argue that their state law claims pertain solely to Club Med's operation of the Varadero resort and do not implicate "any acts of the Cuban government, including commercial acts."  In the alternative, they assert that Cuba's decision to pursue a commercial joint venture with Club Med constitutes the only relevant state action in this case, and the act of state doctrine does not apply to purely commercial acts of a foreign sovereign.  These arguments fail for at least two reasons.  First, as explained above, the relevant state action in this case is Cuba's expropriation of the Varadero property.  Second, we have unequivocally stated that "there is no commercial exception to the act of state doctrine." *Hond. Aircraft Registry, Ltd. v. Gov't of Hond.*, 129 F.3d 543, 550 (11th Cir. 1997) (reversing the district court for erroneously relying on a "perceived commercial exception to the act of state doctrine" and remanding for further proceedings).

7

available to litigants.  *See* 22 U.S.C. § 6085 (authorizing the President to suspend the effective date of the legislation if such suspension is "necessary to the national interests of the United States").  Thus, the Glens rely on the Helms-Burton Act solely to support their arguments that their state law causes of action are sustainable.

In support of their first contention, that the Helms-Burton Act establishes their "ownership interest" in the Varadero property, the Glens cite the Findings section in Title III of the statute, 22 U.S.C. § 6081.  By paraphrasing and taking language from this section out of context, the Glens arrive at the conclusion that Congress has established that the expropriations committed by the Cuban government failed to extinguish the ownership rights of those who owned the properties prior to the takings.  We disagree.

The sections of the Helms-Burton Act cited by the Glens explicitly acknowledge that the Cuban government, under the leadership of Fidel Castro, "confiscated the property" of millions of Cuban citizens, thousands of United States nationals, and thousands more Cubans who later became naturalized United States citizens.  22 U.S.C. § 6081(3)(B).  While the statute condemns these confiscations as "wrongful," it does not proclaim them ineffective.  It is the purpose of the statute to deter third party foreign investors from trafficking in the confiscated property (defined as "purchas[ing] an equity interest in, manag[ing], or enter[ing] into joint ventures

8

using property and assets some of which were confiscated from United States nationals."). *See* 22 U.S.C. § 6081(5), (6), (11). This purpose is achieved through the establishment of a new statutory remedy available (if not suspended) to "United States nationals who were the victims of these confiscations . . . [to] deny traffickers any profits from economically exploiting Castro's wrongful seizures." 22 U.S.C. § 6081(11).[3] The Helms-Burton Act refers to the property interest that former owners of confiscated property now have as ownership of a "claim to such property." 22 U.S.C. § 6082(a)(1)(A). When (or if) the portion of Title III that allows private litigants to bring lawsuits becomes effective, actions brought pursuant to the new statutory scheme would be actions brought "on a claim to the confiscated property" against traffickers in the property. 22 U.S.C. § 6082(a)(4). Thus, the Helms-Burton Act does not proclaim the ineffectiveness of the Cuban expropriations as the Glens claim that it does; and they cannot rely on the statute to establish the ownership element necessary to their state law claims against Club Med.

---

[3]The Glens repeatedly state that there is no question that Club Med is a "trafficker" in confiscated property, as defined by the statute. We need not decide whether this is true because the Glens do not assert a trafficking claim and therefore a determination of Club Med's status under the statute is not necessary to our decision in this case. But we do note that the Varadero property at issue in this litigation was owned by Cuban nationals at the time of its expropriation and thus may not be the proper subject of a trafficking claim under the statute. *See* 22 U.S.C. § 6081(5), (6) (defining "'trafficking' in confiscated property" as transactions in "property and assets some of which were confiscated from United States nationals."); 22 U.S.C. § 6081(11) ("United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States . . . .").

The Glens' second argument is that the Helms-Burton Act makes it clear that the act of state doctrine is inapplicable to all actions brought by rightful owners of expropriated properties against third parties occupying and using land expropriated by the Cuban government. The plain language of the statute does not support the Glens' contention. Section 6082(a)(6) of the Helms-Burton Act states only, "No court of the United States shall decline, based upon the act of state doctrine, to make a determination on the merits *in an action brought under paragraph (1)*." 22 U.S.C. § 6082(a)(6) (emphasis added). Paragraph (1) is the definition of the civil remedy created by the statute, "Liability for trafficking." *See* 22 U.S.C. § 6082(a)(1).

Thus, the statute explicitly forecloses use of the act of state doctrine as a defense to causes of action for liability for trafficking, the statutory cause of action created by 22 U.S.C. § 6082(a)(1). The statute says nothing at all, however, regarding the applicability of the act of state doctrine in any other action, brought pursuant to any other statute or common law. The Glens argue that the legislative findings section (22 U.S.C. § 6081) and election of remedies section (22 U.S.C. § 6082(f)) indicate that it was Congress's intent to eliminate application of the act of state doctrine in all cases concerning property expropriated by the Cuban government. But neither of those sections addresses the act of state doctrine. In the face of clear language forbidding application of the doctrine as to only those "Liability for trafficking"

10

claims brought pursuant to Title III of the statute, we decline to infer that it was Congress's intent to abrogate use of the defense as to a much broader class of claims. In declining to do so, we are conscious of the rule that "the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S. Ct. 2051, 2056 (1980).

Finally, the Glens' assertion that Helms-Burton signals the repudiation of *Sabbatino* is plainly contradicted by the prolonged dormancy of Title III's federal cause of action. As noted above, Congress gave the President authority to suspend the federal remedy at six-month intervals if "such suspension is *necessary to the national interests of the United States* and will expedite a transition to democracy in Cuba." 22 U.S.C. § 6085(c)(1)(B) (emphasis added). Since 1996, Presidents Clinton and Bush have repeatedly and without interruption suspended the right to initiate Title III suits. Thus, the executive branch has affirmed no fewer than twenty times that suits against alleged traffickers in confiscated Cuban property remain, for the time being, detrimental to our national interest and foreign policy, and therefore should not be allowed to go forward.[4]

---

[4] Of course, these considerations also relate to the Glens' claim, addressed above, that the Helms-Burton Act's election of remedies provision recognizes the viability of non-Title III causes

Thus, we hold that the Helms-Burton Act does not affect any change to the existing law. The act of state doctrine is properly applied to claims, like the Glens', that necessarily require U.S. courts to pass on the legality of the Cuban government's expropriation of property within Cuba from then-Cuban citizens. *Sabbatino*, 376 U.S. at 428, 84 S. Ct. at 940; *see also Kirkpatrick*, 493 U.S. at 409, 110 S. Ct. at 707.

## V. CONCLUSION

Because the act of state doctrine requires that the courts deem valid the Cuban government's expropriation of the real property at issue in this case, the Glens cannot maintain their claims for trespass and unjust enrichment against Club Med. Dismissal was proper.

AFFIRMED.

---

of action. It simply makes no sense to contend that Congress authorized the President to suspend the newly created federal remedy for reasons of national interest but assumed that state law remedies, long barred (by the act of state doctrine) out of judicial deference to the political branches' determination of our national interest in matters of foreign policy, were "viable."